[No. 794-2. Division Two. December 28, 1973.]

GRACE PANITZ, *Appellant*, v. ANDREW M. ORENGE *et al.*, *Respondents.*

*A'Lan S. Hutchinson,* for appellant.

*Kenneth G. Burrows* (of *Comfort, Dolack, Hansler & Billett*) and *F. Ross Burgess,* for respondents.

RYAN, J.*—This is an appeal from a judgment granted the defendant, Tacoma Suburban Lines (TSL) upon a challenge to the sufficiency of the evidence at the close of plaintiff's case and from a judgment in favor of defendants Orenge pursuant to a jury verdict.

Mrs. Panitz regularly was a passenger on TSL's bus from her home to her place of employment on the Fort Lewis Military Reservation. The driver ordinarily assigned to this route was driving the bus involved in this accident and Mrs. Panitz was a passenger.

The bus proceeded in a westerly direction on Pendleton Street which was a two-lane, one-way street. At the intersection with 12th Street, the bus pulled over to the right at the northeast corner in order to permit Mrs. Panitz to disembark. The bus came to a stop partially off the street and whether or not the nose of the bus protruded into the crosswalk was disputed.

Mrs. Panitz alighted from the bus and continued a conversation with the bus driver, with whom she had ridden as a passenger many times before. She then proceeded to cross Pendleton in front of the bus and was struck by defendant Orenge as she "took a step out from behind the bus . . ." directly into the path of the Orenge vehicle which had been proceeding westerly behind the bus and was passing it at the moment of impact with the plaintiff who was thrown violently to the pavement, receiving the injuries complained of herein.

The bus driver and another nearby motorist testified that they sounded their horns to warn the plaintiff of her imminent peril but she testified she had not heard them. The

---

*Judge Frank Ryan is serving as a judge pro tempore of the Court of Appeals pursuant to Laws of 1973, ch. 114.

other motorist and his passenger also testified they did not hear the bus horn sound. It is undisputed that Mrs. Panitz did not look to her left as she was crossing the street but was looking only straight ahead. There was a wide disparity in the testimony as to whether the plaintiff was "running," "hurrying," or—as she, the bus driver, and another witness testified—was walking at a normal pace.

The sharpest conflict in the testimony pertains to the key question of whether or not the bus driver waved the plaintiff across the street, indicating that she could safely proceed. Mrs. Panitz testified that she stepped off the bus and "waved to the bus driver as he did to me, showing he had looked in the side view mirror and there was no traffic, so it was safe for me to cross." The plaintiff further testified that when she was waved on by the bus driver she had "faith that he was telling—the right thing." She said that the bus driver had previously waved her across the crosswalk but this answer was objected to and was stricken by the court and the jury instructed to disregard it.

The bus driver testified that he "just waved good morning, good bye, or whatever."

The plaintiff bases this appeal on three assignments of error: first, that the court erred in granting TSL's motion to dismiss at the close of plaintiff's case on the grounds that all responsibility to her ceased after she was safely on the ground; second, that it was error to refuse to instruct regarding the duty of a driver to stop at a crosswalk when another vehicle has already stopped to permit a pedestrian to cross; third, that the court erred in excluding evidence of the plaintiff that the bus driver had waved her across the street on previous occasions.

We hold that the trial court was in error in granting TSL's motion for dismissal. The jury should have been allowed to consider: whether TSL's driver had waved Mrs. Panitz across the street; and if he did, whether the driver was negligent in so doing without first ascertaining that she could proceed in safety; and whether such negligence, if

any, was a proximate cause of Mrs. Panitz' injury, together with her contributory negligence, if any.

The plaintiff urges that the law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which he is liable.

The duty of the bus driver in this case is asserted by the plaintiff to be described as follows:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323, at 135 (1965).

■ It is stated that "the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists." W. Prosser, *Torts*, ch. 9, at 327 (4th ed. 1971). The question of whether the bus driver had a *duty* to exercise due care if he waved Mrs. Panitz across the street, as she alleges, is not a question exclusively for the court. "Generally, the duty to use ordinary care is bounded by the foreseeable range of danger. It is for the jury to decide whether a general field of danger should have been anticipated." *Wells v. Vancouver*, 77 Wn.2d 800, 803, 467 P.2d 292 (1970). We hold that the plaintiff in this case produced substantial evidence from which the jury could have found that Mrs. Panitz was waved across the street by the bus driver who, if he did, had a duty to do so in the exercise of ordinary care; that he breached that duty, and that such breach was the proximate cause of the injury suffered. *Rikstad v. Holmberg*, 76 Wn.2d 265, 268, 456 P.2d 355 (1969). We agree with the dictum in *Edgar v. Brandvold*, 9 Wn. App. 899, 900, 515 P.2d 991 (1973). "[I]t is for the

jury, as reasonable people, to decide whether the actor proceeded with due regard and caution whether he was helping a blind person across the street, handling dynamite or shooting a gun."

Plaintiff next asks that we reverse the decision in favor of defendant Orenge on the ground that the trial court's failure to give plaintiff's proposed instruction 8 was error. The offered instruction is taken from RCW 46.61.235 (4).

RCW 46.61.235 (4) provides:

> Whenever any vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle.

The applicability of this subsection has been discussed in *Rettig v. Coca-Cola Bottling Co.*, 22 Wn.2d 572, 156 P.2d 914 (1945) and *Jung v. York*, 75 Wn.2d 195, 449 P.2d 409 (1969), and it does not apply to the instant fact pattern—thus, it was correctly refused by the trial court.

The last cited cases hold that RCW 46.61.235 (4) is not intended for the protection of passengers discharged from a bus who are not deemed to be pedestrians, even though they proceed across the street in front of a vehicle, but rather for the protection of persons for whom the vehicle has stopped to permit their safe passage over a crosswalk.

Plaintiff's third assignment of error challenges the trial court's ruling excluding certain testimony. Having testified that TSL's bus driver waved her across the street on the morning of her injury, the following occurred:

Q Now you testified you had been on this bus before, had the bus driver ever waved you on before across this crosswalk?
A Yes.

The apparent purpose of the proposed testimony was to show the likelihood that the bus driver had signaled the plaintiff across the street and that she may have justifiably relied upon him. This touches on the question of plaintiff's

contributory negligence although such testimony would relate to collateral events.

■ An objection to the answer was immediately sustained and the answer stricken. Plaintiff maintains that excluding this evidence from the jury was an abuse of the trial court's discretion. The decision to exclude events occurring on previous occasions is a determination falling within the discretion of the trial court. *Stuart v. Consolidated Foods Corp.,* 6 Wn. App. 841, 847, 496 P.2d 527 (1972). Such a ruling will not be disturbed on review except upon a clear showing of abuse of such discretion—that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. Although we find no error in the court's ruling, we strongly suggest that in the event of retrial, the admissibility of this evidence be carefully considered by the trial judge in the light of the presentation made at that time. This evidence appears highly relevant to the duty of the defendant bus driver and the reasonableness of Mrs. Panitz' conduct in light of that duty. This evidence has no relevancy as to Mrs. Panitz' relationship with the defendant Orenge.

The judgment of dismissal of defendant TSL is reversed, the judgment in favor of defendant Orenge is affirmed.

Pearson, C.J., and Petrie, J., concur.

Petition for rehearing denied February 5, 1974.