[No. 11002-4-II.   Division Two.   April 4, 1989.]

WILLIAM F. LEYENDECKER, *Appellant*, v. CURTIS S. COUSINS, ET AL, *Respondents*.

*Theadore E. Ripley,* for appellant.

*David T. Hunter, Jeffrey D. Laveson,* and *Lane, Powell, Moss & Miller,* for respondents.

REED, J.—William Leyendecker appeals a summary judgment granted to Curtis Cousins, et al, and an order awarding certain costs to the defendants. Leyendecker contends that the trial court erred (1) in granting summary judgment for the defendants under the assumption of risk doctrine; and (2) in assessing costs of discovery depositions as taxable costs. We reverse both judgment and order and remand for trial.

Guy Blevins, the purchaser of stumpage rights to wood on ITT Rayonier land, hired Leyendecker, a logger, to work as a cutter in a cedar salvage operation. Leyendecker's duties included cutting fallen timber into bolts, stacking the bolts into slings, and connecting the slings to the hoist cable of a helicopter for removal to a nearby access road, where the wood would be offloaded onto trucks for carriage to the mill. These operations necessitated working directly under the hovering copter and directing its pilot with hand signals.

On January 7, 1981, Leyendecker drove his truck to that day's work site. He was accompanied by co–worker Larry Gooding. Leyendecker parked his vehicle along a logging access road to the west of a turnout. (Coincidentally, this

was at a point where the helicopter was slated to land and refuel.) While Leyendecker was working in the woods, someone (identity unknown) moved his truck to the east side of the turnout because the truck was too close to the area where the wood would be deposited by the helicopter.

After the helicopter was relieved of its load, it landed in the turnout area to refuel. While it was being "hot refueled" (engines idling and rotors spinning), Leyendecker and Gooding entered the turnout area from the woods to the west and rear of the helicopter. Gooding, who was in the lead, walked behind the helicopter (counterclockwise) to the east side, but Leyendecker continued walking on the west side toward where he had left his vehicle. After safely passing the rotating tail rotor, he inexplicably reversed his steps and walked into the whirling rotor. He was injured seriously.

Leyendecker filed suit against the owners and operators of the helicopter for personal injury based upon alleged negligent operation of the helicopter. The defendants moved for summary judgment.

In his deposition, Leyendecker indicated that he had worked three or four times previously in shake bolt operations that involved helicopters. He stated that he had twice flown in helicopters with tail rotors and on those occasions had debarked while the rotors were still revolving. In addition, he admitted that he had heard the helicopter while he still was in the woods, and had seen it when he emerged therefrom, and that there was sufficient space for a person to pass safely by the tail rotor. He also stated that he knew that a helicopter's tail rotor is dangerous, and that he had 20/20 vision and normal hearing on the day of the accident. He could not recall being struck.

Dieter Jahns, an engineering psychologist, testified by deposition that he was asked to do a human factors analysis regarding the conditions and sequences involved in the accident. In his opinion, a tail rotor "is not clearly visible in terms of its true characteristics." He described the tail rotor as a "low contrast target . . ." According to Jahns, people

often inadvertently come in contact with a rotating propeller or tail rotor because they are focusing on some other task and cannot fully ascertain their proximity to the hazard. In his opinion, a procedure should have been set up to designate a safe landing and operations zone by putting up a guarded perimeter around the helicopter. In the alternative, he opined that either flight or ground personnel should have kept others away from the helicopter during the refueling operation.

The trial court granted the defendants' motion for summary judgment on the ground that Leyendecker's assumption of the risk barred his action against the defendants.

### ASSUMPTION OF RISK

Leyendecker first contends that the trial court erred in holding, as a matter of law, that Leyendecker's assumption of risk barred his recovery in this case. We agree.

Summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Hontz v. State,* 105 Wn.2d 302, 311, 714 P.2d 1176 (1986). The court must consider the evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Hontz,* 105 Wn.2d at 311. The essential elements of negligence are: (1) The existence of a duty owed to the complaining party; (2) a breach thereof; (3) a resulting injury; and (4) a proximate cause between claimed breach and resulting injury. *Pedroza v. Bryant,* 101 Wn.2d 226, 228, 677 P.2d 166 (1984). Here, the accident occurred on January 7, 1981, when the comparative negligence statute, RCW 4.22.010, was in effect. RCW 4.22.925.[1]

---

[1]For causes of action arising after July 26, 1981, RCW 4.22.015 (Laws of 1981, ch. 27, § 9, p. 117) the comparative fault statute, provides in part as follows:

"The term [fault] also includes breach of warranty, *unreasonable assumption of risk,* and unreasonable failure to avoid an injury or to mitigate damages. . . ." (Italics ours.)

The trial court granted defendants' motion for summary judgment on the basis of *Ridge v. Kladnick,* 42 Wn. App. 785, 713 P.2d 1131, *review denied,* 106 Wn.2d 1011 (1986). In *Ridge,* the court held that those who choose to participate in sports or amusements consent to being injured by the risks inherent in the activity, and that such conduct constitutes "primary" assumption of risk, which continues as a complete bar to recovery even after the adoption of comparative negligence. *Ridge,* 42 Wn. App. at 788. *See also Foster v. Carter,* 49 Wn. App. 340, 742 P.2d 1257 (1987). The *Ridge* court's reference to primary assumption of risk was taken from W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 68 (5th ed. 1984), as adopted in *Shorter v. Drury,* 103 Wn.2d 645, 695 P.2d 116, *cert. denied,* 474 U.S. 827 (1985).

■ Under Keeton's analysis, assumption of risk is divided into four classifications: (1) express, (2) implied primary, (3) implied reasonable, and (4) implied unreasonable. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 68, at 496–97 (5th ed. 1984). Primary assumption of risk occurs where the plaintiff either expressly or impliedly has consented to relieve the defendant of an obligation or duty to act in a certain way toward him; with express assumption of risk, the plaintiff consents by an affirmatively demonstrated and presumably bargained upon, express agreement. *Kirk v. WSU,* 109 Wn.2d 448, 453, 746 P.2d 285 (1987). Implied primary assumption of risk also is based on consent, but without "the additional ceremonial and evidentiary weight of an express agreement". (Citations omitted.) *Kirk,* 109 Wn.2d at 453. In both of these forms of assumption of risk, consent operates as a principle of no duty "hence no breach and no underlying cause of action." *Codd v. Stevens Pass, Inc.,* 45 Wn. App. 393, 402, 725 P.2d 1008 (1986), *review denied,* 107 Wn.2d 1020 (1987). Thus, *Foster v. Carter, supra,* which involved participants in a BB gun war, and *Ridge v. Kladnick, supra,* are perfect examples of situations where consent

impliedly is given in advance of engaging in an activity likely to cause harm to the participant.

■ In contrast, implied reasonable and unreasonable assumption of risk arise where the plaintiff is aware of a risk that already has been created by the negligence of the defendant, yet chooses voluntarily to encounter it. In such a case, plaintiff's conduct is not truly consensual, but is a form of contributory negligence, in which the negligence consists of making the wrong choice and voluntarily encountering a known unreasonable risk.[2]

As recognized in *Shorter v. Drury, supra,* Keeton's analysis is consistent with the adoption of comparative negligence, which abrogated the defense only with regard to that form of assumption of risk where the plaintiff's conduct is contributorially negligent. *Drury,* 103 Wn.2d at 654–55. Accordingly, Washington continues to recognize express and implied primary assumption of risk as a complete bar to a plaintiff's recovery to the extent the damages resulted from the specific risks assumed. *Kirk,* 109 Wn.2d at 453–55. Similarly, implied reasonable and unreasonable assumption

---

[2]Implied *unreasonable* assumption of the risk focuses on the objective unreasonableness of the plaintiff's conduct in assuming the risk. *Kirk,* 109 Wn.2d at 454. This type of assumption of risk is subsumed under contributory negligence. *Kirk,* 109 Wn.2d at 454. Thus, as a type of contributory negligence, this form has no independent significance in Washington. It merely acts as a damage–reducing factor. *Ridge,* 42 Wn. App. at 787. Implied *reasonable* assumption of risk contemplates a situation in which the plaintiff assumed the risk but acted reasonably in doing so. According to the court in *Kirk,* this form of assumption of risk should be given to a jury as a damage–reducing factor for consideration in a negligence case. *Kirk,* 109 Wn.2d at 458.

We note, however, that under the current contributory *fault* scheme, the definition of fault includes "unreasonable assumption of risk"; the definition does not mention "reasonable" assumption of the risk. RCW 4.22.015. It thus appears that the Legislature does not consider reasonable assumption of risk as a damage–reducing factor. This accords with the view of some commentators who argue that if a person acts reasonably, that person's conduct, ipso facto, is not negligent.

It would thus appear quite odd if the plaintiff's reasonable assumption of the risk to which he was exposed by the negligence of the defendant were treated as an absolute bar. Nor logically should it even factor in to reduce the plaintiff's damages, since his conduct has by definition been free from blame. . . .

W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 68, at 497–98 (5th ed. 1984).

of risk, being merely variants of contributory negligence, are subsumed thereunder and are to be treated equivalently. *Kirk*, 109 Wn.2d at 453–58.

With these principles in mind, we now address the trial court's conclusion that Leyendecker's conduct constituted "primary" (implied) assumption of risk, thus barring his claim.

The extent of the evidence regarding Leyendecker's conduct is that he emerged from some woods, approached the helicopter from behind, observed the helicopter's spinning tail rotor, appreciated the risk posed thereby, voluntarily chose to walk past the spinning blade and then for whatever reason, turned around and walked back into it, thus injuring himself. Although such evidence clearly establishes Leyendecker's knowledge and appreciation of the risk, once encountered, the record is devoid of any evidence tending to prove his antecedent consent to relieve the defendants of any duty they might have to him because of the risks of conducting a hot refueling operation at the landing site. On the contrary, it appears that finding a spinning tail rotor in close proximity to the trail's end was entirely unexpected, and that Leyendecker chose to risk coming into contact with it without defendants' knowledge. Such circumstances clearly fall within either the implied reasonable or unreasonable assumption of risk categories, which, as previously stated, are subsumed under contributory negligence and thus may not serve to bar plaintiff's claim; rather, they act merely as damage–reducing factors.

By our holding that Leyendecker is not barred from recovery on the basis of implied primary assumption of risk, we do not mean to suggest that Leyendecker has per se established a duty on the part of the defendant, the breach of which may be said to have been a proximate cause of Leyendecker's injuries. Whether a defendant owes a duty to the complaining party is a question of law. *Pedroza v. Bryant*, 101 Wn.2d at 228. A defendant's duty may be predicated on violation of a statute or on common law principles of negligence. *Hostetler v. Ward*, 41 Wn.

App. 343, 704 P.2d 1193 (1985), *review denied,* 106 Wn.2d 1004 (1986). We conclude that the common law duty to exercise ordinary care is applicable to the defendants with regard to the operation of the helicopter. We also conclude that Leyendecker's evidence raised genuine issues of material fact with regard to whether defendants acted negligently in the circumstances and whether such negligence, if any, was a proximate cause of his injuries. These issues must be resolved by the jury under proper instructions, and summary judgment favoring the defendants was improper. Accordingly, we remand for further proceedings.

Because there must be a trial, we do not address Leyendecker's other contention that defendants owed him certain duties based upon state regulations pertaining to helicopter logging. WAC 296–54–559.[3] At the appropriate time, based upon the evidence developed at trial, the trial judge will have to rule on the interpretation and application of these regulations, aided *inter alia* by *Kness v. Truck Trailer Equip. Co.,* 81 Wn.2d 251, 501 P.2d 285 (1972); Restatement (Second) of Torts § 286 (1965).

### AWARD OF COSTS

Finally, Leyendecker contends that the trial court erred in awarding costs for depositions taken of witnesses and for the corresponding witness and mileage fee. The fees were awarded pursuant to RCW 4.84.090, which provides in pertinent part:

> The prevailing party, in addition to allowance for costs, as provided in RCW 4.84.080, shall also be allowed for all necessary disbursements, including the fees of officers allowed by law, the fees of witnesses, the necessary expenses of taking depositions, by commission or otherwise, and the compensation of referees. . . .

Although the trial court was correct in awarding costs to defendants, *Spurrell v. Bloch,* 40 Wn. App. 854, 871, 701

---

[3]Leyendecker's reliance on WAC 296–54–559(36) is misplaced. That particular regulation pertains only to preventing injuries from the hot refueling process, such as fire, explosion and the like.

P.2d 529, *review denied,* 104 Wn.2d 1014 (1985), because summary judgment was granted improperly to defendants, we likewise reverse the costs.

WORSWICK, J., and PETRIE, J. Pro Tem., concur.

Reconsideration denied May 1, 1989.

Review denied at 113 Wn.2d 1018 (1989).