[No. 20120-8-II. Division Two. September 19, 1997.]

GLORAY ALSTON, *Appellant*, v. MICHAEL JOSEPH BLYTHE, ET AL., *Respondents.*

---

28

James F. Leggett of Leggett & Kram, for appellant.

Bertil F. Johnson of Davies Pearson, P.C.; and Andrew G. Cooley of Keating, Bucklin & McCormack, P.S., for respondents.

MORGAN, J. — The dispositive issue in this auto-pedestrian case is whether the trial court erred by giving an assumption-of-risk instruction. Holding that it did, we reverse and remand for new trial.

Portland Avenue is an arterial street in Tacoma. Near its intersection with East 29th Street, it has two north-bound lanes, two southbound lanes, and a left-turn lane in the center.

On September 20, 1991, Alston started across Portland Avenue on foot.[1] She was walking from east to west, at or near East 29th Street. It is agreed she was not in a marked crosswalk, but the parties contest whether she was in an unmarked crosswalk.

---

[1]Alston was accompanied by her child, but that fact is not material here.

Steven McVay was driving south on Portland Avenue in the inside (easterly) southbound lane. He was operating a tractor with a flatbed trailer. Seeing Alston as she crossed the northbound lanes, he stopped so she could continue across the southbound lanes. Alston alleges he waved her across the southbound lanes, but he denies the allegation. In any event, Alston crossed in front of his truck and stepped into the outside (westerly) southbound lane. At that moment, Michael Blythe was driving his vehicle south in that lane, and his vehicle struck and injured Alston.

Alston was receiving public assistance at the time of the accident. The Department of Social and Health Services (DSHS) paid a portion of her medical fees, on condition that her physician not attempt to collect the remainder of his fees from her.[2] DSHS did not prohibit the physician from collecting the remainder of his fees out of the proceeds of this lawsuit, if any.[3]

Alston sued Blythe, McVay, and McVay's employer, Kaelin Trucking, alleging negligence. At the ensuing jury trial, the trial court ruled, over Alston's objection, that the defendants could impeach Alston's physician by showing that he would receive the remainder of his fees only if Alston prevailed in the action. At the close of the evidence, Alston objected to many of the trial court's instructions, but not to its instruction on contributory negligence. Ultimately, the jury decided that neither McVay nor Blythe had been negligent, and Alston filed this appeal.

---

[2]*See* WAC 388-87-010(6) ("A provider shall not bill, demand, or otherwise collect reimbursement, from a client . . . for a service included in the client's medical program's scope of benefits."); WAC 388-87-010(9) ("A provider may bill a client for noncovered services only when the: . . . (b) Client received reimbursement directly from a third party for services the department has no payment responsibility for"). *See also* RCW 74.09.180; WAC 388-87-020(2); WAC -388.87.007(3).

[3]*See* WAC 388-87-250(5) ("The provider shall refund to the department, when the third party pays the provider after the department has reimbursed the provider, the amount of the: . . . (b) Department's payment when the third-party payment is equal to or greater than the department's maximum allowable rate.").

Initially, we discuss whether the trial court erred in giving an assumption-of-risk instruction. Then, even though that issue is dispositive, we discuss several additional issues likely to recur on retrial.[4]

## I

Alston contends the trial court erred by giving Instruction 13, which stated:

> It is a defense to an action for personal injury that the plaintiff impliedly assumed a specific risk of harm.
>
> A person impliedly assumes the risk of harm, if that person knows of a specific risk associated with a course of conduct, understands its nature, and voluntarily chooses to accept the risk by engaging in that conduct.[5]

Alston objected to this instruction on the ground that it was not supported by the evidence, and on the further ground that it could be misinterpreted to mean that assumption of risk was a complete bar to recovery. She reiterates the same objections on appeal.

■ Two of the elements of negligence are duty and breach.[6] Thus, a plaintiff claiming negligence must show that the defendant owed a duty of reasonable care to the plaintiff, and that the defendant failed to exercise such care.[7]

■ Two of the elements of contributory negligence are

---

[4]*See Falk v. Keene Corp.*, 53 Wn. App. 238, 246, 767 P.2d 576, *aff'd*, 113 Wn.2d 645 (1989).

[5]Clerk's Papers at 334.

[6]*Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994); *Hansen v. Friend*, 118 Wn.2d 476, 479, 824 P.2d 483 (1992); *Mathis v. Ammons*, 84 Wn. App. 411, 415-16, 928 P.2d 431 (1996), *review denied*, 132 Wn.2d 1008 (1997); *Doherty v. Municipality of Metro. Seattle*, 83 Wn. App. 464, 469, 921 P.2d 1098 (1996). Other elements, not in issue here, are causation and damages. *Mathis*, 84 Wn. App. at 416.

[7]*See Geschwind v. Flanagan*, 121 Wn.2d 833, 854 P.2d 1061 (1993); *Schooley v. Pinch's Deli Mkt., Inc.*, 80 Wn. App. 862, 874, 912 P.2d 1044, *review granted*, 129 Wn.2d 1025 (1996); *Daly v. Lynch*, 24 Wn. App. 69, 76, 600 P.2d 592 (1979). As we have explained elsewhere, duty in this context involves at least three

duty and breach.[8] Thus, a defendant claiming contributory negligence must show that the plaintiff owed a duty to exercise reasonable care for the plaintiff's own safety, and that the plaintiff failed to exercise such care.[9]

■ The doctrine of assumption of risk has four facets. They are (1) express assumption of risk; (2) implied primary assumption of risk; (3) implied reasonable assumption of risk; and (4) implied unreasonable assumption of risk.[10]

The third and fourth facets, implied reasonable and implied unreasonable assumption of risk, are nothing more than alternative names for contributory negligence. As the Supreme Court has said, they "involve the plaintiff's voluntary choice to encounter a risk created by the defendant's negligence," and they "retain no independent significance from contributory negligence after the adoption of comparative negligence."[11] In sum, they bear on the plaintiff's duty to exercise ordinary care for his or her own safety.

The first and second facets, express assumption of risk

questions: What is the obligated class, what is the protected class, and what is the standard of care? Breach mirrors duty, and thus also involves three questions: Does the defendant belong to the obligated class, does the plaintiff belong to the protected class, and did the defendant violate the standard of care? Here, we have no need to consider duty and breach in this much detail. *See Gall v. McDonald Indus.*, 84 Wn. App. 194, 202, 205, 926 P.2d 934 (1996), *review denied*, 131 Wn.2d 1013 (1997); *Nivens v. 7-11 Hoagy's Corner*, 83 Wn. App. 33, 41, 47, 920 P.2d 241 (1996), *review granted*, 131 Wn.2d 1005 (1997); *Schooley*, 80 Wn. App. at 866, 874.

[8] *See Geschwind*, 121 Wn.2d at 838; *Seattle-First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 238, 588 P.2d 1308 (1978). Another element, not in issue here, is that the plaintiff's breach of duty be a cause of plaintiff's own damages. *Price v. Kitsap Transit*, 70 Wn. App. 748, 756, 856 P.2d 384 (1993), *aff'd*, 125 Wn.2d 456 (1994); *Alvarez v. Keyes*, 76 Wn. App. 741, 744, 887 P.2d 496 (1995). *See also Grobe v. Valley Garbage Serv. Inc.*, 87 Wn.2d 217, 231-232, 551 P.2d 748 (1976).

[9] *Geschwind*, 121 Wn.2d at 838; *Alvarez*, 76 Wn. App. at 744.

[10] *Tincani*, 124 Wn.2d at 143; *Scott v. Pacific W. Mt. Resort*, 119 Wn.2d 484, 496, 834 P.2d 6 (1992); *Kirk v. Washington State Univ.*, 109 Wn.2d 448, 453, 746 P.2d 285 (1987); *Shorter v. Drury*, 103 Wn.2d 645, 655, 695 P.2d 116 (1985); *Leyendecker v. Cousins*, 53 Wn. App. 769, 773, 770 P.2d 675 (1989).

[11] *Scott*, 119 Wn.2d at 497; *see also Leyendecker*, 53 Wn. App. at 774-75.

and implied primary assumption of risk, bear not on the *plaintiff's* duty to exercise ordinary care for his or her own safety, but rather on the *defendant's* duty to exercise ordinary care for the safety of others. Both facets raise the same question: Did the plaintiff consent, before the accident or injury, to the negation of a duty that the defendant would otherwise have owed to the plaintiff?[12] If the plaintiff did so consent, "the defendant does not have the duty, there can be no breach and hence no negligence."[13] Thus, when either facet applies, it bars *any* recovery based on the duty that was negated.[14]

■ ■ Although the first and second facets involve the same idea—the plaintiff's consent to negate a duty the defendant would otherwise have owed to the plaintiff—they differ with respect to the way in which the plaintiff manifests consent.[15] With express assumption of risk, the plaintiff states in so many words that he or she consents to relieve the defendant of a duty the defendant would otherwise have. With implied primary assumption of risk, the plaintiff engages in other kinds of conduct, from which consent is then implied.[16] Consent is an issue of fact for

---

[12]*Scott*, 119 Wn.2d at 498; *Kirk*, 109 Wn.2d at 453-54; *Dorr v. Big Creek Wood Prods., Inc.*, 84 Wn. App. 420, 426-27, 927 P.2d 1148 (1996).

[13]*Scott*, 119 Wn.2d at 497; *see also Tincani*, 124 Wn.2d at 143 (implied primary assumption of risk "is really a principle of no duty, or no negligence, and so denies the existence of the underlying action"); *Dorr*, 84 Wn. App. at 427 (implied primary assumption of risk "is only the counterpart of the defendant's lack of duty to protect the plaintiff from that risk"); *Leyendecker*, 53 Wn. App. at 773.

[14]*Scott*, 119 Wn.2d at 496-98; *Dorr*, 84 Wn. App. at 425; *Leyendecker*, 53 Wn. App. at 773.

[15]*Kirk*, 109 Wn.2d at 453; *Leyendecker*, 53 Wn. App. at 773.

[16]*Scott*, 119 Wn.2d at 496-97; *Kirk*, 109 Wn.2d at 453; *Dorr*, 84 Wn. App. at 427 ("Those who choose to participate in sports or other amusements likely to cause harm to the participant, for example, impliedly consent in advance to excuse the defendant from any duty to protect the participant from being injured by the risks inherent in such activity"); *cf. Foster v. Carter*, 49 Wn. App. 340, 346, 742 P.2d 1257 (1987) (plaintiff elected to participate in BB gun war).

the jury, except when the evidence is such that reasonable minds could not differ.[17]

■ Because the plaintiff's consent lies at the heart of both express and implied primary assumption of risk, "[i]t is important to carefully define the *scope*" of that consent.[18] This is done by identifying the duties the defendant would have had in the absence of the doctrine of assumption of risk, and then segregating those duties into (a) those (if any) which the plaintiff consented to negate, and (b) those (if any) which the defendant retained.[19] Like consent itself, the scope of consent is an issue of fact for the jury, unless the evidence is such that reasonable minds could not differ.[20]

■ These principles mean, among other things, that a trial court may instruct on both contributory negligence and assumption of risk *if* the evidence produced at trial is sufficient to support two distinct findings: (a) that the plaintiff consented to relieve the defendant of one or more duties that the defendant would otherwise have owed to the plaintiff, and (b) that the plaintiff failed to exercise ordinary care for his or her own safety.[21] In most situations, however, the evidence will support only the second of these findings, and "an instruction on contributory negligence is all that is necessary or appropriate."[22]

The record in this case contains no evidence that Alston

---

[17]*Dorr*, 84 Wn. App. at 431.

[18]*Scott*, 119 Wn.2d at 497; *see also Kirk*, 109 Wn.2d at 456 ("plaintiff's assumption of certain known risks in a sport or recreational activity does not preclude recovery for injuries resulting from risks not known or not voluntarily encountered.")

[19]*See Scott*, 119 Wn.2d at 497.

[20]*See Dorr*, 84 Wn. App. at 431.

[21]*Dorr*, 84 Wn. App. at 426.

[22]*Dorr*, 84 Wn. App. at 426. In passing, we observe that Division One has expressed skepticism concerning the propriety of some of the Washington Pattern Jury Instructions (WPI) on assumption of risk. *Dorr*, 84 Wn. App. at 430-31. Sharing that skepticism, we additionally suggest that the term "assumption of risk" is needlessly confusing, at least when used in jury instructions. When assumption of risk is properly an issue for the jury, the jury should simply be

expressly or impliedly consented to relieve either McVay or Blythe of the duty of ordinary care that he owed to her as a matter of law. She merely tried to cross the street in a way that may or may not have involved contributory negligence, depending on whose testimony the jury chooses to believe. The evidence supported an instruction on contributory negligence, but not an instruction on assumption of risk, and Instruction 13 was erroneous.

■ The defendants argue that Instruction 13 was harmless, but we do not agree. Instruction 13 stated that the defendants had a "defense" (and, by implication, Alston could not recover) if Alston knew of a specific risk associated with crossing the street, understood that risk, and voluntarily chose to cross anyway. Given that the evidence showed nothing more than arguable contributory negligence, this contravened Washington's comparative negligence scheme, and it may well have been the reason the jury rendered a defense verdict. There is a reasonable likelihood that Instruction 13 skewed the verdict, and a new trial is required.[23]

## II

Alston next contends that the trial court erred by refusing to give an instruction embodying the so-called volunteer doctrine. She proposed three alternative instructions, the simplest of which stated: "A person, having no duty to act, who nevertheless cho[o]ses to act, must do so without negligence."[24]

■ A party is entitled to jury instructions that allow him or her to argue his or her theory of the case, provided of course that he or she has produced evidence sufficient

---

asked to decide whether the plaintiff consented to relieve the defendant of a duty the defendant would otherwise have owed to the plaintiff.

[23]See *Hill v. GTE Directories Sales Corp.*, 71 Wn. App. 132, 144, 856 P.2d 746 (1993) (error not prejudicial "unless it is likely the outcome would have been different without it").

[24]Plaintiff's Proposed Instruction 17, Clerk's Papers at 313.

to support that theory of the case.[25] Alston's theory against McVay and Kaelin Trucking was that McVay had undertaken a duty by waving her across the street, that he therefore was obligated to exercise reasonable care, and that he failed to do so when he did not warn her of Blythe's presence.

 In general, a person "who undertakes, albeit gratuitously, to render aid to or warn a person in danger is required by our law to exercise reasonable care in his efforts, however commendable."[26] If such a person "fails to exercise such care and consequently increases the risk of harm to those he is trying to assist, he is liable for any physical damages he causes."[27]

*Panitz v. Orenge*[28] applies these principles in a context similar to this one. There, the plaintiff was a passenger on a bus. The bus stopped at the right side of a two-lane, one-way road so the plaintiff could disembark. Once off the bus, the plaintiff crossed back in front of it, stepped into the road, and was struck by a passing car. At trial, she testified that the bus driver waved her across the road, and that she relied on his conduct in deciding to step into the road. The trial court granted a defense motion to dismiss for insufficient evidence, the plaintiff appealed, and we reversed. We held that if the jury chose to believe the plaintiff's testimony, it could find that the bus driver had assumed a duty to help her cross the street, and that

---

[25]*Gammon v. Clark Equip. Co.*, 104 Wn.2d 613, 617, 707 P.2d 685 (1985); *Hizey v. Carpenter*, 119 Wn.2d 251, 266, 830 P.2d 646 (1992); *Douglas v. Freeman*, 117 Wn.2d 242, 256-57, 814 P.2d 1160 (1991).

[26]*Brown v. MacPherson's, Inc.*, 86 Wn.2d 293, 299, 545 P.2d 13 (1975); *Roth v. Kay*, 35 Wn. App. 1, 4, 664 P.2d 1299 (1983); *Panitz v. Orenge*, 10 Wn. App. 317, 320, 518 P.2d 726 (1973).

[27]*Brown*, 86 Wn.2d at 299; *see also Panitz*, 10 Wn. App. at 320; *Ashley v. Ensley*, 44 Wn.2d 74, 78-79, 265 P.2d 829 (1954).

[28]10 Wn. App. 317.

he had breached that duty by failing to exercise reasonable care.[29]

Throughout the events in question here, McVay owed a duty to operate his truck with reasonable care. Before he stopped his truck, however, he did not owe a duty to help Alston cross the street safely; that was solely her responsibility. Even *after* he stopped his truck, he still did not owe a duty to help Alston cross the street safely—unless and until he undertook to wave her in front of the truck and across the southbound lanes. If he did that, a jury could find that he assumed a duty to help Alston cross the street; that he was obligated to discharge that duty with reasonable care; and that he failed to exercise reasonable care by not perceiving Blythe, or by failing to warn of Blythe's presence.

The remaining question is whether a jury could find that McVay waved Alston across the southbound lanes. It could, for Alston so testified and a jury could credit her testimony if it wanted to. We hold that Alston was entitled to argue that McVay assumed a duty of reasonable care by waving her across the street, and that the trial court erred by refusing her proposed Instruction 17.

### III

Alston next contends that the trial court improperly instructed on the effect to be given to a violation, if any, of RCW 46.61.235.[30] The trial court instructed that any such violation "is not necessarily negligence, but may be

---

[29]10 Wn. App. at 320.

[30]The court described RCW 46.61.235 in its Instruction 15. That instruction stated:

A statute provides:

(1) That the driver of a vehicle shall yield the right of way, slowing down or stopping if necessary, to a pedestrian crossing the roadway within a crosswalk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling or approaching so closely from the opposite half of the roadway as to be in danger.

considered by you as evidence in determining negligence."[31] According to Alston, however, the trial court should have instructed that any such violation "is negligence as a matter of law."[32]

This contention is contrary to RCW 5.40.060.[33] The reasons are fully explained in *Mathis v. Ammons*,[34] and they need not be repeated here. This contention fails.

## IV

Citing *Jung v. York*,[35] Alston next contends that the trial court erred by giving Instructions 10, 11, 12 and 15. Those instructions described the parties' duties of care and relative rights of way.[36] They were improper, Alston

---

(2) That whenever a vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle.

(3) That a pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.

"Crosswalk" means the portion of the roadway between the intersection area and a prolongation or connection of the farthest sidewalk line or, in the event there are no sidewalks, then between the intersection area and a line ten feet therefrom, except as modified by a marked crosswalk.

This right of way, however, is not absolute but relative, and the duty to exercise ordinary care to avoid collisions rests upon both parties. The primary duty, however, rests upon the party not having the right of way.

Clerk's Papers at 336.

[31]Court's instruction 14, Clerk's Papers at 335.

[32]Plaintiff's Proposed Instruction 5, Clerk's Papers at 281.

[33]RCW 5.40.050 provides, subject to exceptions not pertinent here, that "[a] breach of a duty imposed by statute . . . shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence . . . ."

[34]84 Wn. App. 411, 416-19, 928 P.2d 431 (1996), *review denied*, 132 Wn.2d 1008 (1997).

[35]75 Wn.2d 195, 449 P.2d 409 (1969).

[36]Instruction 10 stated:

It is the duty of every person using a public street or highway whether a pedestrian or a driver or a vehicle to exercise ordinary care to avoid placing

says, because if she "were in the unmarked crosswalk area, she had no continuing duty to look out for the Blythe vehicle."[37]

██ We disagree. The contested instructions were appropriate in the event the jury found that Alston was not in a marked or unmarked crosswalk. Moreover, even if Alston was in a marked or unmarked crosswalk, she still had a duty to exercise reasonable care for her own safety,[38] and the contested instructions merely described various facets of that duty.[39] •

*Jung v. York* is not to the contrary.[40] It is a product of the era when contributory negligence was a complete bar to recovery, and it may not have survived the advent of comparative negligence. *See* RCW 4.22.070. Even assuming it did, however, it is factually distinguishable from the present case. In *Jung,* the plaintiff was in a marked crosswalk, and there was no evidence that she was running or otherwise proceeding without due caution. Here, Alston was in an unmarked crosswalk, or not in a crosswalk at all, when, according to Blythe, she "ran out

---

himself or herself or others in danger and to exercise ordinary care to avoid a collision.

Instruction 11 stated:

Every person using a public street or highway has the right to assume that other persons thereon will use ordinary care and will obey the rules of the road, and has a right to proceed on such assumption until he or she knows, or in the exercise of ordinary care should know, to the contrary.

Instruction 12 stated: "Every person has a duty to see what would be seen by a person exercising ordinary care." Instruction 15 is quoted in a previous footnote.

[37]Br. of Appellant at 17.

[38]*Shasky v. Burden*, 78 Wn.2d 193, 195, 470 P.2d 544 (1970); *Oberlander v. Cox*, 75 Wn.2d 189, 193, 449 P.2d 388 (1969); *Jung*, 75 Wn.2d at 198 (pedestrian in crosswalk has right to assume that operators of approaching vehicles will yield the right of way "until he knows *or should know* to the contrary") (emphasis added).

[39]*Hammel v. Rife*, 37 Wn. App. 577, 586, 682 P.2d 949 (1984).

[40]75 Wn.2d at 195.

in front of that truck" and "into the left side of [his] car."[41]
This evidence, if believed, supports a finding that Alston
failed to exercise ordinary care for her own safety, and it
distinguishes this case from *Jung*.[42]

## V

Over Alston's objection, the trial court permitted McVay
and Blythe to ask Alston's physician whether he had been
paid only in part, and whether he would receive the
remainder of his bill only if Alston's lawsuit succeeded.
The physician said he had received partial payment from
DSHS,[43] and that he would receive the balance of his fee
only if Alston prevailed in the lawsuit. Alston claims that
this testimony violated the collateral source rule.

■■ Evidence showing payments from a collateral
source is inadmissible to reduce a claimant's damages.[44]
Such evidence may, however, be relevant for some other
purpose.[45] When such evidence is inadmissible to reduce
damages, yet relevant for a different, proper purpose, ER
403 applies, and the trial court must balance probative
value (i.e., the effect of the evidence when used properly)
against the danger of unfair prejudice (i.e., the effect of
the evidence if used improperly). The trial court may
exclude the evidence if probative value is substantially
outweighed by the danger of unfair prejudice, ER 403, and

---

[41]Report of Proceedings at 381.

[42]See *Shasky*, 78 Wn.2d 193; *Oberlander*, 75 Wn.2d 189; and *Clements v. Blue Cross*, 37 Wn. App. 544, 682 P.2d 942 (1984). In each of those cases, the court found sufficient evidence to submit contributory negligence to the jury.

[43]The reference to DSHS violated an earlier order of the court, but the court did not abuse its discretion in handling the matter as it did.

[44]*Ciminski v. SCI Corp.*, 90 Wn.2d 802, 804, 585 P.2d 1182 (1978); *Stone v. City of Seattle*, 64 Wn.2d 166, 172, 391 P.2d 179 (1964); *Fleming v. Mulligan*, 3 Wn. App. 951, 954, 478 P.2d 754 (1970).

[45]*Fleming*, 3 Wn. App. at 954.

we review the trial court's ruling only for abuse of discretion.[46]

■■ ■■ Evidence is relevant for a proper purpose if it tends to show a witness' bias.[47] Evidence tends to show a witness' bias if it tends to show that the witness has a financial interest in the outcome of the lawsuit.[48]

The evidence offered here was relevant for a proper purpose, because it tended to show that Alston's physician had an interest in the outcome of the lawsuit. Even if it was inadmissible on the issue of Alston's damages, the trial court was obligated to balance its probative value on the issue of bias against the danger of unfair prejudice on the issue of damages. The trial court's ruling was discretionary, and we hold that the trial court did not abuse its discretion by ruling as it did.

Reversed and remanded for new trial.

BRIDGEWATER, A.C.J., and ARMSTRONG, J., concur.

---

[46]*Johnson v. Weyerhaeuser Co.*, 84 Wn. App. 713, 719, 930 P.2d 331, *review granted*, 132 Wn.2d 1001 (1997).

[47]*State v. Russell*, 125 Wn.2d 24, 92, 882 P.2d 747 (1994); *Dods v. Harrison*, 51 Wn.2d 446, 447-48, 319 P.2d 558 (1957).

[48]*State v. Smits*, 58 Wn. App. 333, 338, 792 P.2d 565 (1990), citing 5 ROBERT MEISENHOLDER, WASHINGTON PRACTICE: EVIDENCE § 299, at 264 (1965) and 5A KARL TEGLUND, WASHINGTON PRACTICE: EVIDENCE § 225 (3d ed. 1989) (trial court erred by prohibiting defendant in criminal assault case from asking whether victim contemplated a civil suit; answer would tend to show whether victim had a financial interest in the outcome of the criminal case); *State v. Buss*, 76 Wn. App. 780, 787-89, 887 P.2d 920 (1995) (similar); *State v. Guizzotti*, 60 Wn. App. 289, 292-94, 803 P.2d 808 (1991) (similar).