[No. 21543-8-II. Division Two. September 11, 1998.]

MARVIN N. EGAN, ET AL., *Appellants*, v. ROBERT A. CAUBLE, ET AL., *Respondents*.

*Douglas C. Elcock*; and *Kristin H. Ollenbrook* of *Greenen & Greenen, P.S.*, for appellants.

*R. Daniel Lindahl* of *Bullivant, Houser, Bailey, Pendergrass & Hoffman*, for respondents.

MORGAN, J. — Marvin N. Egan[1] sued Robert and Cindy Cauble for injuries suffered while trying to lead the Caubles' mare away from a public road. The trial court granted a summary judgment of dismissal. Taking the evidence and reasonable inferences in the light most favorable to Egan,[2] we reverse.

In 1994, the Caubles and Egan lived near each other in rural Clark County. The Caubles owned a mare that they pastured behind the houses of Egan and two other neighbors. Part of the land comprising the pasture was owned by Egan, and part by the other two neighbors. According to the Caubles, they were solely responsible for the mare's custody and control.

The pasture was fenced, but the fence was interrupted by several gates. One of the gates on Egan's property was equipped with a spring-latch that would sometimes open if bumped. The Caubles had tried to fix it several times, without success. Moreover, the Caubles had difficulty keeping the gate closed, irrespective of the latch problem,

---

[1]Marvin's wife, Verletta, is also a party plaintiff, but for convenience, we refer only to him.

[2]*Atherton Condominium Apt. Owners Ass'n v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990); *Campos v. Department of Labor & Indus.*, 75 Wn. App. 379, 383, 880 P.2d 543, *review denied*, 126 Wn.2d 1004 (1995) (citing *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 186, 840 P.2d 851 (1992)).

because of neighborhood children. According to Egan, the gate was never used by him.[3]

Before the event in issue here, the mare had escaped perhaps five times, sometimes through the gate with the defective latch. Each time, she had been brought back by one of the Caubles or a neighbor.

In early April 1994, the mare was in her last month of pregnancy. As a result, her temperament had become "nasty,"[4] and she would sometimes rear when someone tried to put a halter on her. Egan did not know of these recent changes in behavior.

On April 4, 1994, Egan left for work about 5:00 A.M. As he drove out of his driveway, he saw a horse standing in the public road. He recognized it as the Caubles' mare. He thought the situation was dangerous, as conditions were "dark and very foggy"[5] and a number of vehicles use the road at that time of day. After getting out of his car, he approached the mare and took hold of the halter she had on. He then walked her to his garage so he could obtain a rope to clip onto the halter. Near the garage, the mare reared unexpectedly, jerking his arm out of place and knocking him down. Afterward, the gate with the defective latch "was found to be open"[6] and no other "breaks in the fence" were found.[7]

On November 30, 1995, Egan sued the Caubles for negligently allowing the horse to be on the road. The Caubles alleged, among other things, contributory negligence and assumption of risk.

In June 1996, the Caubles moved for summary judgment. Egan did not make a cross-motion. The trial court granted the Caubles' motion, in part on the ground that Egan had

---

[3]Clerk's Papers at 83.

[4]*Id.* at 97, 106.

[5]*Id.* at 32.

[6]*Id.* at 106.

[7]*Id.*; *see also Id.* at 104.

knowingly and voluntarily assumed the risk. Egan then filed this appeal.

■ The main issue on appeal is whether the doctrine of assumption of risk bars Egan's suit. Traditionally, the doctrine of assumption of risk has four facets: (1) express assumption of risk; (2) implied primary assumption of risk; (3) implied reasonable assumption of risk; and (4) implied unreasonable assumption of risk.[8] The third and fourth facets, implied reasonable and implied unreasonable assumption of risk, are nothing but alternative names for contributory negligence,[9] and neither is pertinent here. The first and second facets, express assumption of risk and implied primary assumption of risk, raise the same question: Did the plaintiff consent, before the accident or injury, to the negation of a duty that the defendant would otherwise have owed to the plaintiff?[10] If the answer is yes, "the defendant does not have the duty, there can be no breach and hence no negligence."[11] Thus, when either facet

---

[8]*Tincani v. Inland Empire Zoological Soc'y*, 124 Wn.2d 121, 143, 875 P.2d 621 (1994); *Scott v. Pacific W. Mt. Resort*, 119 Wn.2d 484, 496, 834 P.2d 6 (1992); *Kirk v. Washington State Univ.*, 109 Wn.2d 448, 453, 746 P.2d 285 (1987); *Shorter v. Drury*, 103 Wn.2d 645, 655, 695 P.2d 116, *cert. denied*, 474 U.S. 827 (1985); *Alston v. Blythe*, 88 Wn. App. 26, 32, 943 P.2d 692 (1997); *Leyendecker v. Cousins*, 53 Wn. App. 769, 773, 770 P.2d 675, *review denied*, 781 P.2d 1320 (1989); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 68 (5th ed. 1984).

[9]*Scott*, 119 Wn.2d at 497; *see also Alston*, 88 Wn. App. at 32; *Leyendecker*, 53 Wn. App. at 774-75.

[10]*Scott*, 119 Wn.2d at 498; *Kirk*, 109 Wn.2d at 453-54; *Alston*, 88 Wn. App. at 33; *Dorr v. Big Creek Wood Prods., Inc.*, 84 Wn. App. 420, 426-27, 927 P.2d 1148 (1996).

[11]*Scott*, 119 Wn.2d at 497; *see also Tincani*, 124 Wn.2d at 143 (implied primary assumption of risk "is really a principle of no duty, or no negligence, and so denies the existence of the underlying action"); *Dorr*, 84 Wn. App. at 427 (implied primary assumption of risk "is only the counterpart of the defendant's lack of duty to protect the plaintiff from that risk") (quoting *Scott*, 119 Wn.2d at 498 n.30); *Alston*, 88 Wn. App. at 33; *Leyendecker*, 53 Wn. App. at 773.

It is also possible to phrase assumption of risk in terms of proximate cause. To do that, one simply says that a plaintiff's knowing and voluntary assumption of risk is a superseding intervening cause that breaks the chain of causation, rather than saying that a plaintiff's knowing and voluntary assumption of risk is an implied consent to negate a duty the defendant would otherwise owe. The Caubles made such an argument below, but they do not reiterate it here. Even if they did,

applies, it bars *any* recovery based on the duty that was negated.[12]

 Although the first and second facets involve the same idea—the plaintiff's consent to negate a duty the defendant would otherwise have owed to the plaintiff—they differ with respect to the way in which the plaintiff manifests consent.[13] With express assumption of risk, the plaintiff states in so many words that he or she consents to relieve the defendant of a duty the defendant would otherwise have. With implied primary assumption of risk, the plaintiff engages in other kinds of conduct, from which consent is then implied.[14] Here, we focus on implied consent, which we alternatively refer to as assumption of risk.

To invoke assumption of risk, a defendant must show that the plaintiff knowingly and voluntarily chose to encounter the risk.[15] Thus, "[t]he evidence must show the plaintiff (1) had full subjective understanding (2) of the presence and nature of the specific risk, and (3) voluntarily chose to encounter the risk."[16] Put another way, the plaintiff "must have knowledge of the risk, appreciate and understand its nature, and voluntarily choose to incur it."[17]

it would yield the same result as the discussion in the text. Egan makes a related argument that we discuss in the unpublished part of this opinion.

[12]*Scott*, 119 Wn.2d at 496-98; *Alston*, 88 Wn. App. at 33; *Dorr*, 84 Wn. App. at 425; *Leyendecker*, 53 Wn. App. at 773.

[13]*Kirk*, 109 Wn.2d at 453; *Alston*, 88 Wn. App. at 33; *Leyendecker*, 53 Wn. App. at 773.

[14]*Scott*, 119 Wn.2d at 496-97; *Kirk*, 109 Wn.2d at 453 (citing W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS 496 (5th ed. 1984)); *Alston*, 88 Wn. App. at 33; *Dorr*, 84 Wn. App. at 427 ("Those who choose to participate in sports or other amusements likely to cause harm to the participant, for example, impliedly consent in advance to excuse the defendant from any duty to protect the participant from being injured by the risks inherent in such activity.").

[15]*See* RESTATEMENT (SECOND) OF TORTS § 496 G (defendant has burden of proof on assumption of risk).

[16]*Kirk*, 109 Wn.2d at 453 (citing W. PAGE KEETON, TORTS § 68, at 487; *Wagenblast v. Odessa Sch. Dist. No. 105-157-166J*, 110 Wn.2d 845, 858, 758 P.2d 968 (1988).

[17]*Shorter*, 103 Wn.2d at 656 (citing KEETON, § 68, at 486-87); *Martin v. Kidwiler*, 71 Wn.2d 47, 49, 426 P.2d 489 (1967); *Bailey v. Safeway Stores, Inc.*, 55 Wn.2d 728, 731, 349 P.2d 1077, 1078 (1960).

Knowledge and voluntariness are questions of fact for the jury, except when reasonable minds could not differ.[18]

Whether a plaintiff decides *knowingly* to encounter a risk turns on whether he or she, at the time of decision, *actually and subjectively* knew all facts that a reasonable person in the defendant's shoes would know and disclose, or, concomitantly, all facts that a reasonable person in the plaintiff's shoes would want to know and consider.[19] Thus, "The test is a subjective one: Whether the plaintiff in fact understood the risk; not whether the reasonable person of ordinary prudence would comprehend the risk."[20] The plaintiff must "be aware of more than just the generalized risk of [his or her] activities; there must be proof [he or she] knew of and appreciated the specific hazard which caused the injury."[21] And a plaintiff "appreciates the specific hazard" or risk only if he or she actually and subjectively knows all facts that a reasonable person in the defendant's shoes would know and disclose, or, concomitantly, all facts that a reasonable person in the plaintiff's

---

[18]*See Alston*, 88 Wn. App. at 34 (consent is question of fact for jury except when reasonable minds could not differ).

[19]Put another way, the question turns on whether the plaintiff actually and subjectively knew all facts that the defendant should have known and disclosed in the exercise of ordinary care, and all facts that the plaintiff should have known and considered in the exercise of ordinary care.

[20]*Shorter*, 103 Wn.2d at 656-57.

[21]*Id.* at 657; *see also Klein v. R.D. Werner Co.*, 98 Wn.2d 316, 319, 654 P.2d 94 (1982) ("evidence must show that respondents knew of the specific defect causing their injuries before the assumption of risk doctrine applies"); *Martin*, 71 Wn.2d at 50 (there must be not only "knowledge of a general danger," but also knowledge of the "particular danger," and "the knowledge and appreciation [of danger] by the plaintiff is to be directed toward the particular danger or risk which ends in the plaintiff's injury"); RESTATEMENT (SECOND) OF TORTS § 496 D cmt. b (plaintiff "must not only be aware of the facts which create the danger, but must also appreciate the danger itself and the nature, character, and extent which make it unreasonable").

Incidentally, this requirement of subjective knowledge is what separates assumption of risk and contributory negligence. Assumption of risk turns on what the plaintiff *did* know: *Did* he or she know all facts that a reasonable person in the defendant's shoes would have known? Contributory negligence turns on what the plaintiff *should* have known, or in alternative terms what a reasonable person in the plaintiff's shoes *would* have known, irrespective of what the plaintiff actually and subjectively knew.

shoes would want to know and consider when making the decision at issue.

Whether a plaintiff decides *voluntarily* to encounter a risk depends on whether he or she elects to encounter it despite knowing of a reasonable alternative course of action.[22] Thus, Division One has said that in order for assumption of risk to bar recovery, the plaintiff "must have had a reasonable opportunity to act differently or proceed on an alternate course that would have avoided the danger."[23] And the RESTATEMENT comments:

> Since the basis of assumption of risk is the plaintiff's willingness to accept the risk, take his chances, and look out for himself, his choice in doing so must be a voluntary one. If the plaintiff's words or conduct make it clear that he refuses to accept the risk, he does not assume it. The plaintiff's mere protest against the risk and demand for its removal or for protection against it will not necessarily and conclusively prevent his subsequent acceptance of the risk, if he then proceeds voluntarily into a situation which exposes him to it. Such conduct normally indicates that he does not stand on his objection, and has in fact consented, although reluctantly, to accept the danger and look for himself.[24]

Two cases illustrate. In *Dorr v. Big Creek Wood Prods., Inc.*,[25] Knecht was logging at a remote site. His friend Dorr, also a logger, came to visit. Before approaching Knecht's position, Dorr looked for "widow-makers"—limbs from felled trees caught high in the branches of standing trees. Failing to see any, he walked toward Knecht. As he walked, he was hit and injured by a falling widow-maker that he had not seen. If he had seen it, realized the danger it posed, and decided to hurry under it, he would have actually and subjectively known all facts that a reasonable person would

---

[22]*Zook v. Baier,* 9 Wn. App. 708, 716, 514 P.2d 923 (1973); RESTATEMENT (SECOND) OF TORTS § 496 E.

[23]*Zook v. Baier,* 9 Wn. App. at 716.

[24]RESTATEMENT (SECOND) OF TORTS § 496 E cmt. a.

[25]84 Wn. App. at 420, 927 P.2d 1148 (1996).

have known and disclosed (which is the same as to say he would have "appreciated the specific hazard which caused the injury"),[26] and he would also have known of a reasonable alternative course of action (e.g., remaining where he was, or walking around the area into which the widow-maker might fall). Thus, he would have knowingly and voluntarily assumed the risk. As it was, however, he failed to see the particular widow-maker, and he did not have the kind of subjective knowledge that is a prerequisite to assuming a risk. At most, then, he was contributorially negligent.

In *Alston v. Blythe*,[27] Alston wanted to walk from east to west across an arterial with two northbound and two southbound lanes. A truck driven by McVay stopped in the inside southbound lane, and McVay waved her across in front of him. A car in the outside southbound lane did not stop and struck her as she stepped out from in front of the truck. If Alston had seen the oncoming car, realized the danger, and decided to hurry across in front of it instead of waiting for it to pass, she would have known the facts that a reasonable person would have known and disclosed (which is to say she would have appreciated the specific risk), and she would have assumed the risk. As it was, however, she did not know the car was coming, and she did not have the knowledge required by the doctrine of assumption of risk. At most, she was contributorially negligent.

Given the evidence in this case, a rational trier of fact could find that a reasonable person in Egan's shoes would have wanted to know and consider that the mare had recently acquired a tendency to rear; that Egan did not know that; and thus that Egan did not actually and subjectively appreciate the specific risk.[28] A rational trier could also find that a reasonable person would not have left the mare on the road in the fog that prevailed that morn-

---

[26]*Shorter,* 103 Wn.2d at 657.

[27]88 Wn. App. 26, 943 P.2d 692 (1997).

[28]This is true even though Egan had grown up around horses and was generally familiar with them.

ing, and thus that Egan neither had nor knew that he had a reasonable alternative course of action to what he did. Thus, a rational trier of fact could find that Egan did not knowingly or voluntarily assume the specific risk that culminated in the accident, and the trial court erred by applying assumption of risk as a matter of law.

Reversed and remanded for further proceedings.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

BRIDGEWATER, A.C.J., and ARMSTRONG, J., concur.