[No. 19273-0-II.   Division Two.   January 24, 1997.]
DENNIS R. JOHNSON, *Appellant,* v. WEYERHAEUSER COMPANY, ET AL., *Respondents.*

714

*David B. Vail* and *Law Offices of David B. Vail,* for appellant.

*Kathryn D. Fewell,* for respondents.

ARMSTRONG, J. — Dennis Johnson appeals a superior court verdict affirming a Board of Industrial Insurance Appeals (BIIA) decision closing his claim with a permanent partial disability for low back impairment. He had sought, among other things, a permanent total disability for a psychiatric condition. Johnson assigns error to (1) the trial court's admission of evidence that he and his wife received collateral benefits, and (2) jury instructions

regarding the taxability of those benefits. Finding no abuse of discretion, we affirm.

## FACTS

Dennis Johnson injured his back at work in June 1979. The Department of Labor and Industries (Department) closed Johnson's workers' compensation claim in January 1990, with time-loss compensation to April 27, 1987. The Department also ordered Weyerhaeuser, Johnson's self-insured employer, to pay Johnson a permanent partial disability for low back impairment. Johnson appealed, claiming a permanent total disability partly due to "cognitive impairment." Weyerhaeuser defended, arguing Johnson was not totally and permanently disabled but that he lacked motivation to work.

Before the Industrial Appeals Judge (IAJ), Johnson moved to exclude evidence that he received collateral benefits. Weyerhaeuser argued the evidence would show Johnson was not financially motivated to work. The IAJ denied Johnson's motion because of *In re Lawrence Musick*,[1] in which the BIIA permitted such evidence in a permanent and total disability case.

Weyerhaeuser presented the testimony of at least 11 experts. Occupational experts testified to Johnson's reluctant participation in vocational services. At least seven physicians testified that Johnson exhibited inconsistent or unexplainable symptoms; two of the physicians specifically diagnosed Johnson as malingering, and a third agreed his diagnosis was consistent with malingering.

Through the cross examination of two physicians, Weyerhaeuser showed the amount of income Johnson received from Weyerhaeuser disability retirement, social security, and time-loss compensation. A vocational consultant testified that tax-free income could reduce motivation to seek re-employment. A psychiatrist agreed, testifying that the

---

[1]BIIA No. 48 173 (1978).

receipt of benefits could affect Johnson's motivation to return to work. He noted Johnson's medical records contained "numerous references to secondary gain," defined as "deriving support from the environment by maintenance of symptoms that would not otherwise be forthcoming."

On direct examination, Johnson testified that he "just barely [had] enough money to live on or get by" after he started collecting disability retirement payments. Johnson also volunteered that his wife was receiving workers' compensation benefits, but that she was not receiving as much as her previous wages. Johnson also testified that his wife had been working "full time" before her injury. A vocational rehabilitation counselor called by Johnson testified that he believed time-loss compensation could be subject to income tax.

To contradict testimony of the Johnsons' dire financial situation, the former work status of Mrs. Johnson, and the taxability of workers' compensation, Weyerhaeuser wanted to prove the amount of the Johnsons' income. Johnson objected, but the IAJ allowed Weyerhaeuser to show the amounts the Johnson household was receiving from social security disability, social security for dependent children, Weyerhaeuser retirement, and time-loss compensation. In addition, through an official of Mrs. Johnson's employer, Weyerhaeuser established that Mrs. Johnson was a seasonal worker who had been receiving time-loss compensation since 1985. The official also established the amounts of Mrs. Johnson's average annual salary in 1981-83 and time-loss compensation in 1985, 1987, and 1989-91. Furthermore, the official testified that workers' compensation benefits were not taxable.

The IAJ's proposed decision reversed the Department, granted a permanent partial disability for mental health, and awarded time-loss compensation through June 1988. Weyerhaeuser appealed to the BIIA.

The BIIA found no error in admitting evidence of collateral benefits, but reversed the IAJ's proposed decision and

affirmed the Department's order.[2] Johnson appealed to the Lewis County Superior Court, again moving to exclude evidence of collateral benefits. The trial court denied the motion and the jury returned a verdict affirming the BIIA's findings. Johnson appeals, assigning error to the following: (1) admitting evidence he received social security disability, Weyerhaeuser disability, and time-loss payments;[3] (2) admitting evidence of his wife's workers' compensation benefits; and (3) jury instructions regarding the taxability of his and his wife's benefits.

## ANALYSIS

■ The BIIA's findings and conclusions are prima facie correct and the burden of proof is on the party challenging them.[4] We review the court's ruling on a motion in limine for an abuse of discretion.[5] A trial court abuses its discretion if its ruling is based on untenable grounds or untenable reasons.[6]

### I

### Mr. Johnson's Collateral Income

In personal injury cases, evidence of collateral benefits is not admissible to show a plaintiff's lack of motivation to return to work.[7] But the BIIA has ruled such evidence admissible in BIIA proceedings.[8]

In *Musick*, the BIIA offered three reasons for admitting

[2]*In re Dennis R. Johnson*, BIIA No. 90 1282 (1992).

[3]Johnson objected generally to the collateral benefits; he did not object separately to the *sources* of the income. We therefore do not address this issue.

[4]RCW 51.52.115.

[5]*Medcalf v. Department of Licensing*, 83 Wn. App. 8, 16, 920 P.2d 228 (1996).

[6]*Medcalf*, 83 Wn. App. at 16.

[7]*Boeke v. International Paint Co., Inc.*, 27 Wn. App. 611, 617-18, 620 P.2d 103 (1980), (quoting *Reinan v. Pacific Motor Trucking Co.*, 527 P.2d 256, 258-59 (Or. 1974)), *review denied*, 95 Wn.2d 1004 (1981).

[8]*Musick*, BIIA No. 48 173 at 5-9.

collateral income to show lack of motivation to return to work. First, unlike personal injury actions, awards for permanent disability are determined by statute, not by the trier of fact. Second, the BIIA relied on *Ladley v. Saint Paul Fire & Marine Ins. Co.*,[9] in which, to show motivation to return to work, the court allowed *plaintiff's* evidence that he would have received more retirement benefits had he remained in service until normal retirement age. The *Musick* Board reasoned that if evidence showing financial motivation to work was relevant, then evidence showing financial motivation *not to work* was equally relevant.[10] For further support, the BIIA cited *Fleming v. Mulligan*,[11] where the court allowed evidence of sick leave for the limited purpose of testing a plaintiff's memory concerning the time he was absent from work.[12] Third, because proof of permanent total disability requires "a study of the whole man as an individual," motivation to return to work was a "relevant factor."[13]

Although BIIA decisions are not controlling authority,[14] we find the reasoning in *Musick* persuasive. The primary purpose of the workers' compensation statutes is to provide injured workers "sure and certain relief."[15] Accordingly, the amount of compensation is set by statute.[16] Because juries in industrial insurance appeals do not determine the amount of damages, the risk that evidence of collateral benefits will be used to improperly

[9]73 Wn.2d 928, 934, 442 P.2d 983 (1968).

[10]*Musick*, BIIA No. 48 173 at 6.

[11]3 Wn. App. 951, 954, 478 P.2d 754 (1970), *review denied*, 79 Wn.2d 1001 (1971).

[12]*Musick*, BIIA No. 48 173 at 6.

[13]*Musick*, BIIA No. 48 173 at 7 (quoting *Fochtman v. Department of Labor & Indus.*, 7 Wn. App. 286, 294-95, 499 P.2d 255 (1972)).

[14]*Walmer v. Department of Labor*, 78 Wn. App. 162, 167, 896 P.2d 95, *review denied*, 128 Wn.2d 1003 (1995).

[15]*Stevedoring Servs., Inc. v. Eggert*, 129 Wn.2d 17, 38, 914 P.2d 737 (1996).

[16]*E.g.*, RCW 51.32.060 (permanent total disability compensation).

reduce damages is slight. Therefore, we decline to strictly exclude evidence of collateral benefits in industrial appeals cases. Rather, we will review the admission of such evidence for an abuse of discretion under the standards set by ER 403.[17]

We note the BIIA has also allowed evidence of collateral benefits in *In re Adelbert v. Farr*,[18] but apparently only because the alleged malingering was tied to the receipt of collateral benefits by expert testimony — a condition not required by *Musick*. To the extent *Farr* requires expert testimony to connect the receipt of collateral benefits with malingering, we are not persuaded.[19] But to the extent *Farr* suggests that other evidence of malingering is an appropriate factor for the trial court to consider in weighing relevance against prejudice, we agree.

## A. Relevance

Johnson first argues that evidence of his collateral benefits is not relevant. Evidence that reasonably tends to establish the theory of a party is relevant.[20] Weyerhaeuser's theory was that Johnson was a malingerer and that he lacked motivation to work because, taking into account his tax-exempt collateral income, "he was making more money *not* working than he made working." In support of this theory, a vocational rehabilitation specialist and a psychiatrist testified that the receipt of collateral income could reduce motivation to return to work. In addition, Johnson's medical records contained "numerous references to secondary gain." As one physician explained, sec-

---

[17]"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403.

[18]Bd. of Indus. Ins. Appeals No. 88 0699, at 4-5, WL 164624 (1989).

[19]*See, e.g., State v. Smissaert*, 41 Wn. App. 813, 815, 706 P.2d 647, *review denied*, 104 Wn.2d 1026 (1985) ("If the issue involves a matter of common knowledge about which inexperienced persons are capable of forming a correct judgment, there is no need for expert opinion.").

[20]*In re Marriage of Foran*, 67 Wn. App. 242, 258, 834 P.2d 1081 (1992).

ondary gain includes deriving economic support from the "maintenance of symptoms that would not otherwise be forthcoming." We conclude that the evidence is relevant as an alternative explanation for Johnson's long-standing complaints, complaints that a number of medical experts could not explain on any medical basis.

Johnson next argues that evidence of collateral income received before April 1987 is not relevant because those benefits preceded the Department's order under appeal. He specifically objects to evidence he received benefits in 1981 and 1983. But a vocational consultant who worked with Johnson between 1981 and 1983 testified that Johnson was not cooperative in returning to work. Thus, the evidence is relevant.

Finally, Johnson contends that evidence of social security disability benefits is not relevant because "Social Security disability benefits and workers' compensation disability benefits are offset." He claims that because there is no evidence of the specific amount paid by Social Security — the amount for which Weyerhaeuser received a credit — the evidence was not relevant. This argument misconstrues the purpose of the evidence. Weyerhaeuser's claims representative informed Johnson that Weyerhaeuser would get a credit for the amount paid by Social Security, but that the total paid to Johnson would be the same. The relevance of the evidence lies not in the proportions paid by Weyerhaeuser and social security, but in the amount Johnson received from whatever source for not working.

### B. Prejudice

Johnson argues the evidence of his collateral benefits was unfairly prejudicial, relying on *Eichel v. New York Cent. R.R. Co.*[21] In *Eichel*, a railroad employee sued his employer under the Federal Employers' Liability Act (FELA). At trial, the railroad offered evidence Eichel was receiving a disability pension under the Railroad Retire-

---

[21]375 U.S. 253, 84 S. Ct. 316, 11 L. Ed. 2d 307 (1963).

ment Act. The railroad wanted to impeach Eichel's direct testimony as to his motive for not returning to work and the permanency of his injuries. The Supreme Court affirmed the district court's ruling that the evidence was unduly prejudicial.

*Eichel* is distinguishable. Under the FELA, the trier of fact determines damages. As we have noted above, under the workers' compensation laws, the amount of compensation for a permanent disability is determined by statute, not by the trier of fact. Thus, the unfair prejudice found in *Eichel* is not present here. Moreover, the *Eichel* court upheld the trial court's exercise of discretion, just as we do here.

## II

### Mrs. Johnson's Collateral Income

Johnson claims evidence of his wife's time-loss compensation should have been excluded because (1) Weyerhaeuser failed to show the time period during which she received those benefits, (2) her benefits were not relevant to his motivation, (3) he could not be impeached on a collateral issue and (4) Weyerhaeuser miscalculated or misrepresented the amount of her wages and workers' compensation. We disagree.

First, a witness testified that Mrs. Johnson was injured on March 7, 1984, and that she had been receiving workers' compensation benefits since 1985. Second, evidence that Mrs. Johnson's present tax-exempt benefits were greater than her previous taxable earnings impeached Mr. Johnson's testimony that because of his wife's injury, the family did not "have as much money as [it] used to have for buying things." Third, misrepresentation of his wife's income is not a collateral issue; Johnson's testimony as to the family's hard times was offered to show that he was motivated to return to work, and that was a central issue in the case.

Finally, whether Weyerhaeuser miscalculated or misrep-

resented the amount of Mrs. Johnson's wages in comparison to her workers' compensation benefits is not a question we can resolve. Johnson testified that his wife had worked full time, that she received less in benefits than she earned in wages, and that the family had suffered financially because of her injury. Weyerhaeuser introduced evidence that Mrs. Johnson had been a seasonal worker and that she received more in benefits than she had earned in wages. Johnson argues that Weyerhaeuser's numbers were not accurate, but this is an argument appropriately made to the hearing officer, not a court of appeals; it raises at most a credibility issue to be decided by the fact finder.[22] Weyerhaeuser's evidence, on its face, rebutted Johnson's claim that his family was suffering financially because of his inability to work. It went to Johnson's motivation to return to work, which was a central issue in the case, and thus it was admissible. If Weyerhaeuser's numbers were flawed, Johnson should have pointed out the flaws to the hearing officer. We find no abuse of discretion.

## III
### Jury Instructions

Johnson assigns error to the jury instructions concerning the taxability of his and his wife's collateral benefits. He argues only that because the evidence of collateral benefits was inadmissible, the instructions should not have been given. In view of our holding that the evidence was properly admitted, we find no error in the instructions.

We affirm.

BRIDGEWATER, A.C.J., and MORGAN, J., concur.

Review granted at 132 Wn.2d 1001 (1997).

---

[22]*State v. Dietrich*, 75 Wn.2d 676, 677-78, 453 P.2d 654 (1969); *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533, *review denied*, 119 Wn.2d 1011 (1992).