953 P.2d 800 (1998)
134 Wash.2d 795
Dennis R. JOHNSON, Petitioner,
v.
WEYERHAEUSER COMPANY, Employer, Respondent,
The Department of Labor and Industries of the State of Washington.
No. 65131-1.
Supreme Court of Washington, En Banc.
Argued October 28, 1997.
Decided April 2, 1998.
*801 Annan & Fairley, John Fairley, Spokane, Amicus Curiae for Washington Self-Insurers Association.
Debra Stephens, Harbaugh & Bloom, Gary Bloom, Bryan P. Harnetiaux, Delay, Curran, Thompson & Pontarolo, Michael J. Pontarolo, Spokane, Amicus Curiae for Washington State Trial Lawyers Association.
Lane, Powell, Spears & Lubersky, D. Michael Reilly, Robert J. Guite, Robert J. Dzielak, Seattle, Amicus Curiae for Washington Defense Trial Lawyers.
David B. Vail & Associates, Edward F. St. Onge, Tacoma, for Petitioner.
Kathryn D. Fewell, Tacoma, for Respondent.
JOHNSON, Justice.
We are asked to determine whether evidence of collateral benefits received by an injured worker should be barred from workers' compensation proceedings. We hold that the collateral source rule bars such evidence.

FACTS
On June 4, 1979, Dennis Johnson was injured while in the course of his employment with Weyerhaeuser, a self-insured employer. On June 21, 1979, Johnson filed an application for workers' compensation benefits with The Department of Labor and Industries (Department). Johnson's application was allowed and benefits were provided. On January 24, 1990, the Department closed Johnson's claim with time loss compensation to April 27, 1987. The Department also ordered Weyerhaeuser to pay Johnson a Category 3 permanent partial disability award for low back impairment.[1] The Department denied Johnson's claim for total permanent disability for a psychiatric condition.
Johnson appealed his award, arguing he was permanently and totally disabled due to a cognitive impairment. Weyerhaeuser argued Johnson was not permanently and totally disabled. Weyerhaeuser asserted Johnson was not motivated to work and, in support of this argument, sought to introduce evidence he was receiving more money per month in disability benefits than he earned while he was employed. Johnson moved to exclude this evidence of receipt of collateral benefits but the industrial appeals judge (IAJ) denied the motion. The IAJ also ruled Johnson could present evidence relating to the collateral benefits issue during his case in chief without waiving his objection.
At the hearing, several physicians testified that Johnson exhibited inconsistent or unexplainable symptoms. Two of those physicians diagnosed Johnson as malingering and a third physician agreed his diagnosis was consistent with a diagnosis of malingering. Testimony regarding specific amounts of money that both Mr. and Mrs. Johnson received from collateral sources was also elicited from some of the physicians and from Mrs. Johnson's former employer.
The IAJ issued a proposed decision and order reversing the Department's order and directing Weyerhaeuser to: (1) allow Johnson's psychiatric condition as causally related to his industrial injury; (2) pay for treatment of that condition; (3) pay time loss compensation for the period of April 27, 1987 until July 26, 1988; and (4) pay a Category 2 permanent partial disability award for a mental condition.[2] Weyerhaeuser appealed the IAJ's decision to the Board of Industrial Insurance Appeals (Board). The Board reversed the IAJ's decision and reinstated the Department's order. In re Dennis R. Johnson, Board of Indus. Ins. Appeals No. 90 1282 (1992).
Johnson obtained review by the Lewis County Superior Court, renewing his objection to the introduction of evidence of collateral benefits. The court overruled the objection and the jury returned a verdict affirming the Board's findings. Johnson appealed to *802 the Court of Appeals, Division Two, which affirmed the superior court's decision. Johnson v. Weyerhaeuser Co., 84 Wash.App. 713, 930 P.2d 331 (1997). Johnson then petitioned for discretionary review here. We granted his petition.

ANALYSIS
Johnson argues that evidence of payments he and his wife received from various outside sources should have been barred by the collateral source rule. The common law collateral source rule allows an injured party to recover compensatory damages from a tortfeasor without regard to payments the injured party received from a source independent of the tortfeasor. See Stone v. City of Seattle, 64 Wash.2d 166, 172, 391 P.2d 179 (1964). In the context of personal injury actions, the collateral source rule has been the rule in Washington for 85 years. See Heath v. Seattle Taxicab Co., 73 Wash. 177, 186, 131 P. 843 (1913); Ciminski v. SCI Corp., 90 Wash.2d 802, 804-05, 585 P.2d 1182 (1978). See also Boeke v. International Paint Co., 27 Wash.App. 611, 618, 620 P.2d 103 (1980) ("We agree that the rule of strict exclusion represents the better view"); accord Sutton v. Shufelberger, 31 Wash.App. 579, 583, 643 P.2d 920 (1982).
The issue here is whether there exists such a significant difference between personal injury actions and workers' compensation proceedings that the collateral source rule should not apply in workers' compensation proceedings. In this case, Division Two of the Court of Appeals felt that such a difference exists and held the collateral source rule is inapplicable in workers' compensation proceedings when evidence of collateral benefits is offered to show the plaintiff is malingering. The Court of Appeals reasoned that because "juries in industrial insurance appeals do not determine the amount of damages, the risk that evidence of collateral benefits will be used to improperly reduce damages is slight." Johnson, 84 Wash.App. at 718-19, 930 P.2d 331.
We do not agree this distinction requires abandonment of the collateral source rule. First, workers who are injured in the course of their employment generally do not have the option to bring a personal injury lawsuit. Instead, the injured worker obtains compensation under the Industrial Insurance Act, RCW Title 51 (Act).[3] The Act states:
The state of Washington ... declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workers, injured in their work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.
RCW 51.04.010 (emphasis added). We have previously recognized the change in the common law brought about by the Legislature's enactment of the Industrial Insurance Act and that the Act is remedial in nature and "is to be liberally applied to achieve its purpose of providing compensation to all covered persons injured in their employment." Sacred Heart Med. Ctr. v. Carrado, 92 Wash.2d 631, 635, 600 P.2d 1015 (1979).
To deny application of the collateral source rule in workers' compensation proceedings on the basis that such proceedings are distinct from regular personal injury proceedings does a particular injustice to the injured worker who, in most instances, is restricted by the Act from bringing a standard personal injury action where the collateral source rule would apply to bar evidence of collateral source payments. Wheeler v. Catholic Archdiocese, 65 Wash.App. 552, 570-71, 829 P.2d 196 (1992) ("[w]orkers' compensation benefits include compensation for lost wages; they literally take the place of damages in a personal injury action against any employer, which damages would include lost wages"), *803 rev'd on other grounds, Wheeler v. Catholic Archdiocese, 124 Wash.2d 634, 880 P.2d 29 (1994).
Second, simply because the factfinder in a workers' compensation action determines the worker's level of disability and not the specific monetary award does not remove the risk that evidence of monetary amounts the claimant has received from collateral benefits will be misused, particularly when the proceedings may eventually reach trial de novo in superior court. This risk of misuse of the evidence is one of the foundations of the collateral source rule. Furthermore, the risk is fundamentally the same in both personal injury actions and workers' compensation proceedings. This is true because at any stage of a workers' compensation proceeding, the trier of fact could use evidence of collateral source benefits to determine that the claimant does not need the award and, therefore, is not disabled.[4] The only existing adequate protection to eliminate this risk is the collateral source rule.
In Franks v. Department of Labor & Indus., 35 Wash.2d 763, 215 P.2d 416 (1950), we recognized that the factfinder in workers' compensation proceedings is highly susceptible to prejudice when evidence of monetary figures is brought before it. In Franks, the factfinder rendered a verdict in favor of a claimant in an action under the workers' compensation act. The Department moved for a new trial arguing, among other things, that a jury instruction which divulged to the jury the actual monetary figure of the award sought by the claimant was erroneous. We stated:
We believe that the mention of past or present permanent disability awards, or claimed awards, in terms of money, is confusing to the jury, whose sole function is to determine disability in terms of physical condition.... Even if the jury properly understands its function, the mention of dollars injects a consideration foreign to the determination of physical condition.

Franks, 35 Wash.2d at 771-72, 215 P.2d 416 (emphasis added); accord Diesso v. Department of Labor & Indus., 36 Wash.2d 58, 62, 216 P.2d 752 (1950) ("[t]he industrial insurance act is not one designed to award full compensation to each individual for all such damages as such individual would be entitled to in his peculiar circumstances") (quoting Foster v. Industrial Ins. Comm'n, 107 Wash. 400, 402, 181 P. 912 (1919)).
In arguing the Court of Appeals erroneously affirmed the trial court's decision, Johnson relies on the United States Supreme Court's decision in Eichel v. New York Cent. R.R. Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963). In that case, the plaintiff sued his former employer, the New York Central Railroad, under the Federal Employers' Liability Act (FELA) for damages for a permanently disabling injury. During the trial, the Railroad attempted to introduce evidence that the plaintiff was receiving $190 per month in disability pension payments under the Railroad Retirement Act of 1937. The Supreme Court held that evidence of the disability payments is inadmissible as to the extent and duration of the plaintiff's disability or on the issue of malingering. In so holding, the Supreme Court stated:
Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension.... It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact.

Eichel, 375 U.S. at 255, 84 S.Ct. at 317 (emphasis added) (footnotes omitted). We find the reasoning of Eichel persuasive.
*804 Weyerhaeuser, however, relies on Ladley v. Saint Paul Fire & Marine Ins. Co., 73 Wash.2d 928, 442 P.2d 983 (1968), a case we decided after Eichel where we held that plaintiff's introduction of evidence that he was receiving collateral benefits was relevant to the plaintiff's argument that he was not malingering. Ladley, 73 Wash.2d at 934, 442 P.2d 983. Weyerhaeuser asserts that under Ladley, if evidence of collateral benefits is admissible to show the plaintiff was not malingering, then the same evidence is admissible to show the plaintiff was malingering. Weyerhaeuser argues that "by deciding the case of Ladley, after Eichel [this court] was clearly declining to expand a limited rule in a specific federal statutory act addressing damages in railroad actions to litigation outside of the limited parameters of FELA." Answer to Pet. for Review at 16.
Ladley, however, is not instructive. In Ladley we did not discuss the prejudicial nature of collateral source benefits evidence where it is the defendant attempting to introduce such evidence against the claimant. The fact that a claimant may offer evidence of collateral benefits and, thus, open the door for the defendant's use of such evidence is significantly distinct from a defendant introducing such evidence to attack the claimant's motivation to work. That a claimant chooses not to invoke the protections of the rule does not require the conclusion that the defendant is entitled to eliminate the rule for his or her purposes. Ciminski, 90 Wash.2d at 806-07, 585 P.2d 1182 ("[T]he real question is not whether there is a windfall, but rather who is to get it. As between an injured plaintiff and a defendant, we have no hesitation in saying that the former is entitled to prevail.").
Additionally, Weyerhaeuser argues it was entitled to introduce evidence demonstrating that the total amount of Johnson's social security disability, Weyerhaeuser retirement, and time loss compensation benefits was higher than the wages he earned while he was employed in order to "attack his [Johnson's] credibility concerning his statement that he had `just barely ... enough money to live on or get by' and his statements concerning his wife's income...." Answer to Pet. for Review at 4 (quoting Trial Tr. (9/7/90) at 64).
As the United States Supreme Court stated in Eichel, however, there is often evidence less inflammatory than collateral benefits available to the defendant on the issue of malingering. See Eichel, 375 U.S. at 255, 84 S.Ct. at 317. Malingering can be established through expert and nonexpert opinion including doctor's records, as well as videotape of the plaintiff's capacity for activity. In this case, Weyerhaeuser called numerous witnesses to testify to Johnson's disability. The record shows Weyerhaeuser offered the testimony of three doctors who concluded Johnson was malingering. A great deal of this testimony was given without regard to Johnson's finances. The need for the evidence of Johnson's finances was marginal at best.
Regardless, there is an inherent problem with admitting collateral benefits evidence to show malingering. By seeking admission of collateral benefits evidence to show the defendant is malingering, the defendant is attempting to show the claimant is receiving enough money from sources outside workers' compensation benefits to satisfy the claimant's financial needs. The very essence of the collateral source rule requires exclusion of evidence of other money received by the claimant so the factfinder will not infer the claimant is receiving a windfall and nullify the defendant's responsibility. If evidence of collateral benefits is admitted, the message received by the factfinder is that the claimant already has enough money and, therefore, is not disabled. Johnson argues, persuasively, that use of collateral benefits evidence to show the plaintiff is malingering is "disturbing."
It basically infers that any injured out-of-work worker that receives money from outside sources lacks motivation to return to work. The worker's independent financial foresight has nothing to do with the degree of their [sic] disability.... Admission of this kind of evidence will turn workers' compensation trials into tests of wealth and worthiness and will not promote "sure and certain relief" to injured workers. *805 Pet'rs Answer to Amicus Br. at 5 (quoting RCW 51.04.010). We agree. Evidence of Mr. Johnson's collateral benefits should have been excluded here.
Johnson also argues that evidence of collateral benefits received by his wife should not have been admitted. The Court of Appeals concluded the evidence was properly admitted because Mr. Johnson opened the door by testifying that due to Mrs. Johnson's injury, the family did not "have as much money as [it] used to...." Johnson, 84 Wash.App. at 721, 930 P.2d 331. Because we remand this case for a new trial, this evidence will be admissible only if Mr. Johnson opens the door to such evidence. As noted above, the collateral source rule is designed to protect injured parties. The potential prejudice of collateral benefits evidence might lead to a conclusion by the factfinder that because an injured worker's spouse is also receiving collateral source payments, both spouses are feigning injury. Injured parties may, however, waive the protections of the collateral source rule by opening the door to evidence of collateral benefits. The trier of fact is free to make this determination upon remand.

CONCLUSION
In typical civil cases, the collateral source rule affords protection to injured parties. We hold the collateral source rule also bars evidence of collateral benefits from workers' compensation proceedings. The same rationale we have relied upon for 85 years to bar evidence of collateral source payments in personal injury cases applies with equal force in workers' compensation proceedings. Namely, application of the collateral source rule eliminates the possibility that evidence of collateral benefits will prejudice the factfinder in determining the claimant's level of disability or in any other manner.
The decision of the Court of Appeals is reversed and the case remanded for further proceedings.
DOLLIVER, SMITH, GUY, MADSEN, ALEXANDER and TALMADGE, JJ., concur.
SANDERS, Justice (dissenting).
The majority holds evidence an injured worker receives more in benefits today than he received in wages while working is inadmissible to rebut and/or impeach his testimony that his inability to return to work was caused by a "cognitive impairment." By so holding the majority imposes a blanket rule excluding such evidence even where, as here, its probative value outweighs any prejudicial effect. I dissent because I am persuaded the majority's rule hobbles the truth-finding function of the court and is inconsistent with the weight of authority that would allow such evidence. I therefore agree with the learned superior court judge and the unanimous panel of the Court of Appeals, each of whom found this evidence admissible.
The majority's reasoning is straightforward: It asserts this evidence would be strictly excluded in a personal injury case and finds no reason to treat workers' compensation cases differently. See Majority at 802. To support its result the majority relies on a Supreme Court case, Eichel v. New York Cent. R.R. Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963). The majority's analysis is flawed because this evidence would be admissible in a personal injury case, and Eichel is not inconsistent with the result urged here.

Admissible for other purposes
Under the collateral source rule, evidence showing an injured worker receives payments from collateral sources such as social security is indeed inadmissible to reduce the injured plaintiff's damages. Ciminski v. SCI Corp., 90 Wash.2d 802, 804, 585 P.2d 1182 (1978). The policy behind the rule is that the wrongdoer should not benefit from collateral payments made by third parties to the person he has wronged. Id. Certainly the majority would be correct in its analysis and outcome if the evidence in question were offered to mitigate a damage award.
However, this evidence is offered for another purpose, and in Washington and nearly every other jurisdiction, evidence of collateral source benefits is admissible for other purposes, where relevant. See Alston v. *806 Blythe, 88 Wash.App. 26, 40, 943 P.2d 692 (1997) ("Evidence showing payments from a collateral source is inadmissible to reduce a claimant's damages. Such evidence may, however, be relevant for some other purpose.") (citing Ciminski, 90 Wash.2d at 804, 585 P.2d 1182 and Fleming v. Mulligan, 3 Wash.App. 951, 954, 478 P.2d 754 (1970) (footnote omitted)).[1] For example in Fleming evidence of collateral payments was admissible for the limited purpose of testing plaintiff's accuracy concerning the time he was absent from work. In this respect, collateral source benefits evidence is similar to many other types of evidence which are inadmissible for one purpose yet admissible for another.[2]
Courts have long recognized that collateral source benefits evidence may be admissible to show the worker's motivation for exaggerating injury and desiring not to return to work. The American Law Reports annotation discussing the precise point at issue in this case summarizes relevant case law: "[M]ost courts have recognized that, insofar as it tends to establish a motivation for inactivity unrelated to physical incapacity, evidence of a personal injury plaintiff's receipt of collateral source benefits during the period of his alleged disability is relevant to the basic issue of the extent of his injuries." William H. Danne, Jr., Annotation, Admissibility of Evidence that Injured Plaintiff Received Benefits from a Collateral Source, on Issue of Malingering or Motivation to Extend Period of Disability, 47 A.L.R.3d 234, 238 (1973).
Law review comments are in accord[3] as are most courts. For example, in Corsetti v. Stone Co., 396 Mass. 1, 483 N.E.2d 793 (1985) the Supreme Judicial Court of Massachusetts held evidence that the injured worker was receiving more money in benefits than he did in wages while working was admissible for the purpose of showing motive not to work. Likewise, in Gurliacci v. Mayer, 218 Conn. 531, 555, 590 A.2d 914, 927 (1991), the Connecticut Supreme Court held evidence that the injured worker received more in benefits than he did in wages is admissible "for the limited purpose of showing that the plaintiff's absence from work was not the result of disability but that the plaintiff was a malingerer who was motivated by her financial situation to remain out of work." In Nasser v. Auto Club Ins. Ass'n, 435 Mich. 33, 457 N.W.2d 637, 651 (1990), the Michigan high court similarly ruled "evidence of the collateral *807 sources of insurance is offered [and is admissible] to prove malingering or exaggeration of injuries by plaintiff, rather than in mitigation of damages." For other examples see Blacha v. Gagnon, 47 Mich.App. 168, 209 N.W.2d 292, 296 (1973) ("[E]vidence of receipt of benefits from a collateral source may be introduced to show the existence of a motive for remaining away from work."); Kish v. Board of Educ., 76 N.Y.2d 379, 558 N.E.2d 1159, 1162, 559 N.Y.S.2d 687, 690 (1990) (evidence of collateral benefits is inadmissible "unless it is centrally relevant to issues in substantial dispute bearing on the legitimacy of the claim of permanent disability for example, plaintiff's motivation for not working and defense claims of exaggeration or malingering."); Burke Enter., Inc. v. Mitchell, 700 S.W.2d 789, 796, 57 A.L.R.4th 1167 (Ky.1985) ("Nor is the tortfeasor entitled to introduce evidence at trial of such [collateral source disability] payments, except to corroborate other evidence, if there is any, that establishes malingering."); Soucy v. Martin, 121 R.I. 651, 402 A.2d 1167, 1170 (1979) ("`the collateral source rule should [not] be an absolute prohibition to the introduction of evidence that a plaintiff was paid by his employer during the period of alleged disability when such evidence is offered to show that plaintiff was not disabled....'") (quoting Bookbinder v. Rotondo, 109 R.I. 346, 285 A.2d 387, 393 (1972)); Hrnjak v. Graymar, Inc., 4 Cal.3d 725, 484 P.2d 599, 605, 94 Cal.Rptr. 623, 629, 47 A.L.R.3d 224 (1971) (evidence of collateral source benefits is admissible where the evidence carries "substantial probative value as proof that the plaintiff is a malingerer."); Leizear v. Butler, 226 Md. 171, 172 A.2d 518, 520 (1961) ("[T]estimony [of collateral source benefits] is admissible if there is evidence in the case of malingering or exaggeration of injury but is inadmissible if there is no such evidence or if the question is asked for the real purpose of mitigating the liability of the defendant.") (Citations omitted.).
Washington previously joined the growing family of jurisdictions which allow this evidence. In Ladley v. Saint Paul Fire & Marine Ins. Co., 73 Wash.2d 928, 934, 442 P.2d 983 (1968), this court held evidence of collateral benefits was admissible to show an injured worker's lack of motivation to return to work. The majority's attempt to distinguish Ladley is unpersuasive. Cf. Majority at 804.

Distinguishing Eichel
In the place of Ladley, which decided the issue in this jurisdiction, the majority relies on Eichel v. New York Cent. R.R. Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963) to support a rule of strict and absolute exclusion even where the evidence is relevant. Yet Eichel considered the situation where, on the issue of malingering, "there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension." Id. at 255, 84 S.Ct. at 317. According to the court, Eichel "suffered a permanently disabling injury," id. at 253, 84 S.Ct. at 316, which I assume makes reference to a physical impairment capable of objective ascertainment beyond the subjective vagaries of psychological opinion. Here, however, Mr. Johnson's claim ultimately rests upon the credibility which a mental health care professional and/or the jury attributes to his statements.
Even if we were to consider Eichel as a statement of a categorical rule, we need not follow it as most state courts have not. The lead annotation on the subject notes Eichel has been rejected as "[m]ost courts, however, have refused to adopt such an inflexible exclusionary rule and have instead chosen to regard the admissibility of collateral source benefits evidence for the purpose of establishing malingering, as being a matter at least to some extent within the discretion of the trial judge." William H. Danne, Jr., supra, 47 A.L.R.3d at 239-40. For example, the Connecticut high court declined to follow the alleged inflexible rule in Eichel noting: "Eichel has been limited, however, to the federal statutory scheme of the Railroad Retirement Act." Gurliacci, 590 A.2d at 929 n. 23.[4] Even federal courts limit Eichel to the *808 peculiar statute there at issue. For example, in DeMedeiros v. Koehring Co. the First Circuit allowed evidence of collateral benefits to show worker's motivation not to return to work and limited the applicability of Eichel, explaining: "[T]his circuit has refused to extend the holding in Eichel beyond its federal statutory context." DeMedeiros v. Koehring Co., 709 F.2d 734, 741 (1st Cir.1983).
As noted, Washington likewise rejected the Eichel approach as evidenced by Ladley, decided by this court five years after Eichel. Ladley, 73 Wash.2d at 934, 442 P.2d 983 (collateral benefits admissible to show motivation to return to work).

Probative value versus prejudicial effect
While evidence of collateral benefits is admissible for purposes other than to reduce damages, the trial court must, as with any other evidence, weigh its probative value versus its prejudicial effect under ER 403.[5]See, e.g., Alston v. Blythe, 88 Wash.App. 26, 40, 943 P.2d 692 (1997) ("When such evidence [of collateral benefits] is inadmissible to reduce damages, yet relevant for a different, proper purpose, ER 403 applies, and the trial court must balance probative value (i.e., the effect of the evidence when used properly) against the danger of unfair prejudice (i.e., the effect of the evidence if used improperly).").
The trial court must vigilantly conduct this ER 403 balancing act and should err on the side of exclusion, admitting such evidence only in clear cases. As the California court cautioned, because of the risk of prejudice collateral source benefit evidence "should be permitted only upon a persuasive showing that the evidence sought to be introduced is of substantial probative value." Hrnjak v. Graymar, Inc., 4 Cal.3d 725, 484 P.2d 599, 604, 94 Cal.Rptr. 623, 628, 47 A.L.R.3d 224 (1971). See also William H. Danne, Jr., supra, 47 A.L.R.3d at 238 (Ordinarily "the trial judge should exclude such evidence, or admit it only warily."). However, if the trial court vigilantly maintains high standards for admission of such evidence, the inflexible exclusionary rule created by the majority is rendered unnecessary and serves only to hobble the fact finder by excluding evidence that should be admitted in those rare cases where relevance clearly outweighs prejudice.
Thus, we should inquire into probative value and prejudicial effect. Generally, collateral benefits will not be relevant to determine whether a given worker is injured. Accordingly evidence of collateral benefits is, in most cases, inadmissible to show malingering. But this case is the exception which should prove the rule.
Here the central issue was whether Johnson, the injured worker, was totally or partially disabled. He had already been designated as partially disabled. He sought reclassification on the grounds he was totally disabled due to a previously undisclosed "cognitive impairment" in addition to his physical injury, and as a result of this "cognitive impairment" he could not return to work. Weyerhaeuser defended by attempting to show that the injured worker's failure to return to work was driven, not by any "cognitive impairment," but rather by a cognitive predisposition not to work, i.e., malingering. Weyerhaeuser introduced much expert testimony that Johnson was indeed a malingerer and the majority today confirms that admission of such evidence was proper. Majority at 804. Indeed, Weyerhaeuser even offered Johnson a desk job which he refused. The evidence that Johnson is receiving more in benefits than he was receiving in wages while working is directly relevant to establish a motive not to work. Given the weakness of human nature such would seem self-evident to the informed observer. But without the critical evidence of total benefits received versus Johnson's wages, Weyerhaeuser's very credible defense is robbed of its reason because it lacks the essential, and highly relevant, factual predicate.
*809 On the flip side the court must consider prejudicial effect. Ordinarily, evidence of collateral benefits will be highly prejudicial because the jury may naturally offset the amount of damages awarded against the collateral benefits received. However here, as the majority notes, the jury does not decide the amount of damages because this is a worker's compensation case (rather than a personal injury one) and thus this danger is considerably lessened.
We must therefore ask whether the trial court abused its discretion under ER 403 by admitting the evidence. I think not. As the New York high court opined, evidence of collateral benefits "should be precluded unless it is centrally relevant to issues in substantial dispute bearing on the legitimacy of the claim of permanent disabilityfor example, plaintiff's motivation for not working and defense claims of exaggeration or malingering." Kish v. Board of Educ., 76 N.Y.2d 379, 558 N.E.2d 1159, 1162, 559 N.Y.S.2d 687, 690 (1990).
The superior court and the Court of Appeals were correct to recognize the evidence in question is subject to ER 403 balancing and were also correct when reading the scale. Yet the majority today imposes an artificial rule of total exclusion, the result of which, in this case and possibly others, is exclusion of evidence relevant and necessary to enable the factfinder to determine whether the injured worker is truly incapacitated or whether his unwillingness to return to work is the result of malingering.

Also admissible for impeachment
While the evidence of collateral benefits is admissible in this case to show motive, it is also admissible for the separate purpose of impeachment. As the majority acknowledges, use of such evidence is proper to impeach the witness if the witness first testifies inconsistently. See Majority at 804-805 ("Injured parties may, however, waive the protections of the collateral source rule by opening the door to evidence of collateral benefits.").[6]
Johnson voluntarily took the stand and testified that after the injury he had "just barely enough money to live on or get by," Appeal Board Record (ABR) (9/7/90) at 64, and that "we don't have as much money as we used to for buying things," ABR (9/7/90) at 65. Introduction of evidence that Johnson is receiving more money now than he did when he was working is excellent impeachment evidence. As the Third Circuit held, "the collateral benefit rule cannot be made a springboard from which a plaintiff may go forward with affirmative evidence ... of financial need and then seek immunity from cross-examination regarding it." Gladden v. P. Henderson & Co., 385 F.2d 480, 484 (3d Cir.1967), cert. denied, 390 U.S. 1013, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968). Yet the majority allows just that today.
For these reasons I dissent.
DURHAM, C.J., concurs.
NOTES
[1] A Category 3 low back impairment is defined in WAC 296-20-280.
[2] A Category 2 permanent impairment for mental health is defined in WAC 296-20-340.
[3] RCW Chapter 51.24 provides that an injured worker continues to have a cause of action against his or her employer or a third person not in the worker's same employ for intentional torts as though the Industrial Insurance Act had not been enacted. See RCW 51.24.020; RCW 51.24.030. In such actions, however, the collateral source rule continues to have application.
[4] Although the trial court's review is under the de novo standard, the "trial court is not permitted to receive evidence or testimony other than, or in addition to, that offered before the Board or included in the record filed by the Board." Sepich v. Department of Labor & Indus., 75 Wash.2d 312, 316, 450 P.2d 940 (1969); see RCW 51.52.115. "[E]ven though the trial court may rule independently on evidentiary questions, as an appellate tribunal, it can only pass upon those matters that have first been presented to the Board and preserved in the Board's record for review." Sepich, 75 Wash.2d at 316, 450 P.2d 940.
[1] See, e.g., Evans v. Wilson, 279 Ark. 224, 650 S.W.2d 569, 570 (1983) ("There are unquestionably situations in which proof of a plaintiff's collateral income may be admissible for a particular purpose. We mention four such purposes: One, to rebut the plaintiff's testimony that he was compelled by financial necessity to return to work prematurely or to forego additional medical care. Two, to show that the plaintiff had attributed his condition to some other cause, such as sickness. Three, to impeach the plaintiff's testimony that he had paid his medical expenses himself. And four, to show that the plaintiff had actually continued to work instead of being out of work, as he claimed." (citations omitted)).
[2] "The unquestioned inadmissibility of collateral source benefits evidence when offered for the purpose of directly reducing recoverable damages, and its generally conceded relevancy upon the question of malingering, seem to place it within the broad category of evidence competent for one purpose but not for another." William H. Danne, Jr., Annotation, Admissibility of Evidence that Injured Plaintiff Received Benefits from a Collateral Source, on Issue of Malingering or Motivation to Extend Period of Disability, 47 A.L.R.3d 234, 239 (1973).
[3] See Richard C. Witzel, Jr., Note, The Collateral Source Rule and State-Provided Special Education and Therapy, 75 Wash.U.L.Q. 697, 700 n. 17 (1997):

The evidentiary component of the collateral source rule only precludes a plaintiff from offering evidence of collateral source benefits to mitigate the amount of damages the plaintiff suffered. The collateral source rule does not preclude the defendant from offering evidence that the plaintiff received collateral source benefits when this evidence is offered for purposes other than to mitigate the amount of damages the plaintiff suffered. For example ... where the plaintiff is seeking damages for lost wages and there is evidence that the plaintiff has been malingering in (i.e., not returning to work because of payments from collateral sources such as unemployment compensation and social security benefits), evidence of the collateral payments is admissible.
See also Daena A. Goldsmith, Comment, A Survey of the Collateral Source Rule: The Effects of Tort Reform and Impact on Multistate Litigation, 53 J.Air L. & Com. 799, 826 (1988) (Collateral source evidence may be admissible "to show that the plaintiff is malingering.").
[4] See also Kish v. Board of Educ., 76 N.Y.2d 379, 558 N.E.2d 1159, 1162 n. 2, 559 N.Y.S.2d 687, 690 n. 2 (1990) (limiting Eichel); Hrnjak v. Graymar, Inc., 4 Cal.3d 725, 484 P.2d 599, 605, 94 Cal.Rptr. 623, 629, 47 A.L.R.3d 224 (1971) (declining to follow Eichel).
[5] ER 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
[6] See also Macias v. Ramos, 917 S.W.2d 371, 374 (Tex.App.1996) (collateral source benefits evidence is admissible "for impeachment purposes when a witness gives testimony inconsistent with the receipt of benefits. [J.R. Beadel & Co. v.] De La Garza, 690 S.W.2d [71,] 74 [ (Tex.App.1985) ]. For example, in Castro [v. U.S. Natural Resources, Inc., 880 S.W.2d 62 (Tex.App.1994) ], we held that the fact that worker's compensation benefits were received could be utilized to impeach testimony that Castro was concerned about paying his bills. Castro, 880 S.W.2d at 67. Similarly, in Mundy v. Shippers, Inc., 783 S.W.2d 743 (Tex.App.Houston [14th Dist.] 1990, writ denied), the court determined that testimony regarding inability to pay bills warranted the introduction of evidence regarding the receipt of collateral source benefits. Mundy, 783 S.W.2d at 745. Again, in Barrera v. E.I. DuPont De Nemours & Co., Inc., 653 F.2d 915 (5th Cir.1981), the court held evidence of collateral benefits admissible where plaintiff had testified that he did not even have `a penny in [his] pocket.' Barrera, 653 F.2d at 920-21.").